In re TUAN TAN DINH, Debtor.

Bankruptcy No. 88–10227S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 21, 1988.

Irv Ackelsberg, Community Legal Services, Inc., Philadelphia, Pa., for debtor.

Edward Mazze, Furlong, Pa., trustee.

K. Kevin Murphy, PHEAA, Harrisburg, Pa.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Certain orders issued by bankruptcy courts are accorded a special degree of finality. One of these orders is a discharge order granted to a Chapter 7 debtor, which may be revoked only in accordance with 11 U.S.C. §§ 727(d) and (e). Here, a debtor seeks to revoke his own discharge order when his discharge proved to be not only worthless, but a bar to a valuable discharge for over five years. Although the Debtor acted quickly to request this relief, and we believe that we would be empowered to grant him relief if the equitable considerations were in his favor, we fail to find those considerations in his favor, and we shall therefore deny his request.

This Chapter 7 case was filed on January 22, 1988. Nothing of any particular import occurred through the date of the meeting of creditors on March 4, 1988; the dispatch of the Information Regarding Your Bankruptcy Discharge which this court provides to debtors in lieu of a discharge hearing in most Chapter 7 cases;[1] and the entry of a discharge order in the ordinary course on May 18, 1988.

After his discharge, on May 27, 1988, the Debtor filed and served the instant Motion to Reopen, to Vacate Discharge and to Dismiss Case. An Answer opposing this motion was filed by the Pennsylvania Higher Education Assistance Agency (hereinafter referred to as "PHEAA"). After one continuance, the matter came before us for a hearing on August 18, 1988. No testimony was presented. The sole record made by the Debtor in support of this Motion was, therefore, those allegations pleaded in the Motion and not denied in PHEAA's Answer. Although we were inclined to deny the Motion at the hearing, we acceded to the Debtor's request to submit briefing addressing the merits of same. Upon receipt of PHEAA's responsive brief one day beyond the date on which its production was directed, on September 9, 1988, the matter was ripe for decision.

The Motion and Answer establish that the Debtor scheduled only one debt, a loan with a balance of between $18,000.00 and

---

**1.** *See* Local Rule 4008.2 and Local Bankruptcy Form 4008.2, which, although not effective until July 1, 1988, codified the procedure in effect during the entire period of the pendency of the Debtor's bankruptcy case.

$19,146.40 to PHEAA "for higher education completed in May, 1981." The Debtor and his counsel apparently believed that the five-year period in which the loan became due expired prior to his filing on January 22, 1988, which, pursuant to 11 U.S.C. § 523(a)(8)(A), would have resulted in the unconditional discharge of that obligation. However, on February 23, 1988, PHEAA's counsel advised the Debtor's counsel that the educational loan in issue had been deferred until October, 1983, and that hence PHEAA's position was that the five-year period would not expire until October, 1988. Therefore, according to PHEAA, the debt could not be discharged pursuant to § 523(a)(8)(A), and could be discharged only if the Debtor filed and prevailed in an adversary proceeding invoking 11 U.S.C. § 523(a)(8)(B).

On March 2, 1988, both counsel discussed the matter by telephone, and the Debtor's counsel requested documentation to support PHEAA's claim of a deferment. PHEAA's counsel advised that this documentation could not presently be located, but that he would forward it to the Debtor's counsel when he found it. The matter was discussed again by telephone between counsel on March 11, 1988, and April 21, 1988, but PHEAA's counsel advised that he had not yet located the requested documentation on each occasion. Finally, it was located and forwarded to the Debtor's counsel, who received it on May 11, 1988. Upon its receipt, counsel for the Debtor contacted the Debtor and arranged to meet with him to discuss his options [2] on May 24, 1988, "when he [apparently counsel] returned from a brief vacation." Of course, by the time of this meeting, the Discharge Order had been entered.

The Debtor's Motion does not invoke any procedural rule pursuant to which it is filed. In his Brief, the Debtor mentions Bankruptcy Rules (hereinafter "B.Rules") 9023 and 9024, which, for the most part, incorporate, respectively, Federal Rules of Civil Procedure (hereinafter "F.R.Civ.P.") 59 and 60; B.Rule 9006(b); and 11 U.S.C. § 305(a). The Debtor is, apparently, hedging his bets as to which is the optimal applicable rule due to this court's skepticism of the merits of the Motion expressed at the hearing on August 18, 1988.

Our skepticism was created by our awareness of a line of cases with which we confronted the Debtor's counsel at the August 18, 1988, hearing which hold, rather uncategorically, that a discharge order, once entered, can be set aside only by motion of the trustee, a creditor, and the United States Trustee, pursuant to 11 U.S.C. §§ 727(d), (e), and *not* by motion of a debtor. *In re Morgan,* 668 F.2d 261 (7th Cir.1981); *In re Fischer,* 72 B.R. 111 (Bankr.D.Minn.1987); *In re Calabretta,* 68 B.R. 861 (Bankr.D.Conn.1987); *In re Gruber,* 22 B.R. 768 (Bankr.N.D.Ohio 1982); *In re McQuality,* 5 B.R. 302 (Bankr.S.D.Ohio 1980); and 4 COLLIER ON BANKRUPTCY, ¶ 727.15, at 727–105 n. 7a (15th ed. 1988).

The Debtor makes several arguments seeking to avoid the application of the holding of those cases to the matter at bench. First, he points to two cases where, when no interested party objected, courts did effectively "reopen" discharges to allow the filing and approval of post-discharge reaffirmation agreements. *In re Long,* 22 B.R. 152 (Bankr.D.Me.1982); and *In re Solomon,* 15 B.R. 105 (Bankr.E.D.Pa.1981).

Further, he argues that F.R.Civ.P. 59(e) and 60(b) allow reconsideration of *any* order, and that this should allow us to vacate the discharge order in issue here. *See Long, supra,* 22 B.R. at 154 (F.R.Civ.P. 60(b) allows vacation of discharge order). *Cf. In re Moseley,* 74 B.R. 791, 804 (Bankr. C.D.Cal.1987) (court states, in dictum, that

---

**2.** The Debtor's counsel describes these options as "voluntary dismissal or conversion to Chapter 13." Debtor's Memorandum of Law Pursuant to Order of August 18, 1988, at 2. That Memorandum also recites several matters not of record, such as that the Debtor did not have a "good command of English" and counsel "felt it was necessary to explain these options in person rather than on the telephone." *Id.* at n. 2. Also conceded frankly in the Memorandum is that the deadlines for filing Objections to the discharge was May 4, 1988, but that counsel "neglected to 'tickle' that date in his calendar" and therefore "failed to filed a motion to delay entry of the discharge under B.Rule 4004(c)." *Id.* at n. 3.

a motion to alter or amend a confirmation order might be appropriate in certain circumstances). *But see, Fischer, supra,* 72 B.R. at 114; and *Gruber, supra,* 22 B.R. at 770 (discharge order is not analogous to a judgment, and is therefore not subject to relief under F.R.Civ. 59 or 60).[3]

There is a distinction between motions filed pursuant to F.R.Civ.P. 59(e), as opposed to those filed pursuant to F.R.Civ.P. 60(b). A Rule 59(e) motion must be served in timely fashion, which the Debtor here did accomplish, giving him the potential to invoke either procedural rule. *See, e.g., Smith v. Evans,* 853 F.2d 155, 157–62 (3d Cir.1988); and *In re Campfire Shop, Inc.,* 71 B.R. 521, 523–24 (Bankr.E.D.Pa.1987). A Rule 59(e) motion is available to correct a broad range of alleged errors, including a "relitigat[ion] [of] the original issue," *Smith, supra,* at 158, or a correction of "judicial errors," otherwise confined to appeals. *Campfire Shop,* 71 B.R. at 524. A Rule 60(b) motion, on the other hand, contemplates relief on the basis of a mistake, inadvertence, excusable neglect, or newly-discovered evidence by a party, or "any other reason." However, such a motion does not, generally, empower the court to change its decision if it believes, after submission of the motion, that it has simply erred on legal grounds. *See Smith,* at 158–59; and 7 J. MOORE, FEDERAL PRACTICE, ¶ 60.22[2], at 60–175 to 60–185 (2d ed. 1988).

We believe that the finality of a discharge order must be accorded special consideration. In that sense, it is like a confirmation order in a Chapter 11, 12, or 13 case, which will not be vacated for even the clearest of equitable grounds, *see, e.g., In re Brown,* 76 B.R. 1013 (Bankr.E.D.Pa. 1987) (mortgagee not entitled to revoke confirmation order even though it filed its proof of claim in error due to confusion of the debtor with another debtor of the same name). A confirmation order may generally be vacated only if fraud is alleged to have been perpetrated in its procurement, and even then only if a motion to revoke it is filed within 180 days after its entry. *See* 11 U.S.C. §§ 1144, 1230, 1330. *See also, In re Gronski,* 86 B.R. 428, 431–32 (Bankr.E. D.Pa.1988); *In re Bonanno,* 78 B.R. 52, 55–56 (Bankr.E.D.Pa.1987); and *In re Young,* 76 B.R. 504, 506 (Bankr.E.D.Pa. 1987). The same is true of a discharge order, in light of 11 U.S.C. §§ 727(d) and (e).

This is not to say that, under no circumstances, does a court ever have the power to vacate a confirmation order—or a discharge order—entered in error. A good case in point is *In re Rideout,* 86 B.R. 523 (Bankr.N.D.Ohio 1988). There, the court set aside a confirmation order mistakenly entered due to a total absence of notice to creditors of the confirmation hearing. However, we note that, although the *Rideout* court acted on the basis of F.R.Civ.P. 60(b)(4) and considerations of due process, as well as 11 U.S.C. § 105(a), *id.* at 529–30, because it believed its confirmation order to be void under the circumstances, it declined to act on the purely equitable bases of F.R.Civ.P. 60(b)(1) or 60(b)(6). *Id.* at 531.

The Debtor, we believe correctly, suggests that the equitable considerations set forth in cases considering motions to vacate default judgments, such as *Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 122–24 (3d Cir.1983); and *Feliciano v. Reliant Tooling Company, Ltd.,* 691 F.2d 653, 656 (3d Cir.1982), may be applied in considering both a Rule 59(e) and a Rule

---

**3.** The Debtor's arguments based on B.Rule 9006(b) and 11 U.S.C. § 305(a) can be disposed of summarily. The former allows an extension of time only when "an act is required or allowed to be done within a specified period by these rules...." There is no authority in the Code or the Bankruptcy Rules requiring or allowing the Debtor to make this motion. Hence, B.Rule 9006(b) is inapplicable. 11 U.S.C. § 305(a) may be invoked only upon a finding that "the interests of creditors" would be "better served" by a dismissal. PHEAA's objection negates the elements of unanimity which we held must accompany such a motion. *Cf. In re T.D.M.A., Inc.,* 66 B.R. 992, 995 (Bankr.E.D.Pa.1986). Like PHEAA, we fail to see how, in any objective sense, PHEAA, the only creditor, could be said to be "better served" by a dismissal. Further, the Debtor's analysis is based on the unlikely reading of the phrase allowing invocation of 11 U.S.C. § 305(a) "at any time" as allowing a dismissal even after a case is closed. ,

60(b) motion. These considerations are as follows:

1. Whether the plaintiff will be prejudiced;

2. Whether the defendant has a meritorious defense; and

3. Whether culpable conduct of the defendant led to the default.

See also, e.g., Emcasco Insurance Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir.1987); Zawadski De Bueno v. Bueno Castro, 822 F.2d 416, 419–20 (3d Cir.1987); Fleet v. United States Consumer Council, Inc., 70 B.R. 845, 850 (E.D.Pa.1987); and In re Wells, 87 B.R. 862, 863 (Bankr.E.D.Pa. 1988).

The recitation of the factors enunciated as relevant to a motion to vacate a default judgment must be distilled somewhat in considering a motion to vacate a discharge order. There is no issue of a "meritorious defense" to such an Order. The issue of the merits of the position of the party seeking the order becomes merged with the issue of relative prejudice to other interested parties. The degree of culpability of the Debtor in allowing the unwanted discharge order to be entered, i.e., the culpability of the moving party, also is a pertinent factor.

We believe that, when both the consideration of relative prejudice to the parties and his own lack of culpability in allowing the order to be entered tip very strongly in favor of the moving party, a bankruptcy court should be empowered to vacate an order of confirmation—or a discharge order—upon motion of the debtor. Contra: Fischer, supra; and Gruber, supra. Therefore, we believe that, when no creditors object and all appear to concur in entry of such an order, as in Long and Solomon, the courts properly granted the debtor's motion.

However, here, there is no such unanimity of interested parties to the desirability of entering the order vacating the Debtor's discharge. The Debtor has only one creditor, i.e., PHEAA, and that creditor objects to the granting of the motion. There is no other creditor in any way affected by the outcome. Further, we find that neither of the relevant factors of relative prejudice to

the interested parties or culpability of the moving party tip, if at all, very strongly in favor of the Debtor.

At no time did PHEAA, the only creditor which stands to lose from granting this motion, mislead the Debtor or his counsel about the potential impediment to the desired end of wiping out the Debtor's obligation to PHEAA by means of a discharge. As early as February 23, 1988, PHEAA's counsel warned the Debtor's counsel that he believed that the Debtor's obligation to PHEAA would not, as the Debtor hoped, be discharged under § 523(a)(8)(A). It was only the request of the Debtor's counsel for documentation—which ultimately supported exactly what PHEAA had asserted ever since February 23, 1988—which apparently held up the Debtor's conclusively determining that the case should be dismissed. Nor did PHEAA wait until after the Discharge order was snugly in place to dispatch the documentation. It arrived at least a week before the discharge order was entered. Although the Debtor's Memorandum states that the Debtor's "poor command of English" made a personal interview a necessity before deciding on a cause of action, this is not a matter of record, and it appears to be a misplaced attempt to play on our sympathy. The Debtor's counsel, whom we assume the Debtor relied upon, had, at his disposal, all of the information he needed to determine the Debtor's options prior to the entry of the discharge order. As the Debtor's counsel candidly concedes, he could have filed a motion pursuant to B.Rule 4004(c) to defer the entry of the discharge order. The Debtors' options could have been discussed by the Debtor and his counsel face-to-face at any time subsequent to February 23, 1988, if a language problem required this kind of communication. Further, we believe that, without any additional record, we would be indisposed to conclude that, seven years after he attained "higher education" for which he borrowed almost $20,-000.00, the Debtor had an inadequate command of English to be able to discuss this matter over the telephone with his counsel.

As it points out in its Brief, PHEAA did suffer prejudice by the Debtor's filing the instant Chapter 7 case, even if the case would be ultimately dismissed as worthless. The automatic stay was in place for the duration of the case, holding PHEAA at bay as the five-year deadline after which the Debtor's obligation to it could be unconditionally discharged was approaching. It is regretful that the Debtor has obtained a discharge which provides him no permanent benefit. However, the Debtor's plight, at this point, is not nearly so dreadful as he paints it.

It is true that the Debtor will not be able to obtain a discharge in another Chapter 7 bankruptcy case filed prior to January 22, 1994. 11 U.S.C. § 727(a)(8). However, this court has been liberal in establishing objective guidelines for any indigent person to obtain a hardship discharge under 11 U.S. C. § 523(a)(8)(B). *See In re Bryant,* 72 B.R. 913, 914–19 (Bankr.E.D.Pa.1987). PHEAA has expressed a willingness to agree to have the case reopened for this purpose.

The Debtor's Memorandum suggests that one option to be considered at the belated face-to-face interview between the Debtor and his counsel was converting this case to a Chapter 13 case. We perceive nothing preventing the Debtor from now filing a new Chapter 13 bankruptcy, and accomplishing precisely the same ends. *See In re Metz,* 820 F.2d 1845 (9th Cir. 1987); *In re Baker,* 736 F.2d 481 (8th Cir. 1984); and *In re Latimer,* 82 B.R. 354, 364 (Bankr.E.D.Pa.1988) (filing a Chapter 13 case immediately after receiving a Chapter 7 discharge is not necessarily improper). A Chapter 13 filing would permit the Debtor to discharge his entire student loan merely by paying all of his projected disposable income over a three-year period to PHEAA. *See* 11 U.S.C. § 1325(b)(1)(B); and *In re Gathright,* 67 B.R. 384, 391 (Bankr.E.D.Pa. 1986), *appeal dismissed,* 71 B.R. 343 (E.D. Pa.1987) (student loan can be discharged in a Chapter 13 case). This, again, provides a liberal statutory construction which allows honest debtors to extricate themselves from crushing student-loan responsibilities.

*Contra: In re Doersam,* 849 F.2d 237 (6th Cir.1988).

We therefore conclude that the Debtor will suffer relatively little prejudice if this motion is denied. We find little in the way of factors which mitigate the culpability of him and of his counsel in allowing the discharge order to be entered. We therefore have little qualms in entering an order denying the Debtor's motion before us.