**In re Rodney James SIEG, and Ruth Lynn Sieg, Debtors.**

**Bankruptcy No. 88–05980.**

United States Bankruptcy Court,
D. North Dakota.

Oct. 19, 1990.

Joseph F. Larson, Jamestown, N.D., for debtor.

Gary Cameron, Moorhead, Minn., trustee.

Kent M. Morrow, Bismarck, N.D., for The Bank of North Dakota.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court on remand from the District Court with instruction to reconsider its bench decision of April 25, 1990. This court denied confirmation of the Debtors' Chapter 13 plan holding that the plan, filed in a case converted from a Chapter 7, was in bad faith.

The District Court, expressed no opinion on whether or not bad faith existed, instead leaving it to this court to reconsider the record and the law applicable. This court, after review of the record, first recounts the relevant facts and procedural history, and to allay any doubt as to the basis for its earlier opinion, will discuss and amplify the law deemed applicable.

1.

The Debtors filed a joint voluntary petition under Chapter 7 of the Code on November 21, 1988. Their schedules, filed on the same date list two secured creditors holding claims totalling $9,278.00 and twelve unsecured creditors with claims totalling $41,081.90. Of the unsecured claims, four, totalling $26,690.00, are in consequence of educational loans owing to: Bank of North Dakota ($2,065.00); Dr. Martin Luther College ($400.00); Student Loan Servicing ($21,081.12); and Wisconsin Higher Education Counsel ($3,145.05). The student loans comprised sixty-five percent of the unsecured debt listed on the Chapter 7 schedules.

On March 9, 1989, the Debtors were granted a discharge pursuant to section 727 of the Code which released them of all dischargeable debts. The trustee filed his report and by Order entered March 31, 1989, the case was closed as a no asset case.

Eight months later, by Ex Parte Motion filed November 30, 1989, the Debtors moved to reopen their Chapter 7 case for the avowed purpose of commencing an adversary proceeding for determining the dischargeability of their student loans under section 523(a)(8) of the Code. This court, by Order of December 5, 1990, granted the reopening for the purpose of filing a section 523(a)(8) action. The day following this Order, however, the Debtors filed an amendment to their motion, this time suggesting that upon reopening they would seek conversion to a Chapter 13 rather than pursuing a 523 action.

No adversary proceeding was commenced, rather, on March 1, 1990, a motion to convert the Chapter 7 to a Chapter 13 was filed. Recognizing the unequivocal language of section 706, the case was converted by Order entered March 1, 1990. New schedules filed with the petition, listed the same unsecured creditors as were listed in the previous Chapter 7 schedules except for a reduction of $1,402.19 apparently resulting from post-petition payments to several creditors. The student loans were again listed totalling $26,690.00 and comprised sixty-seven percent of the rescheduled unsecured debt.

A proposed Chapter 13 plan was also filed on March 1, 1990, by which the Debtors, ignoring the previously obtained Chapter 7 discharge, listed as members of the unsecured class all of the Chapter 7 unsecured claimants (except those paid post-petition) adding to the class a $3,546.00 undersecured claim of ITT Financial. The plan proposed a pro-rata distribution to the unsecured class over three years of any amounts remaining after payment of priority and secured claims. Under the plan the Debtors would pay the trustee $205.00 per month over three years out of which the trustee would pay priority claims of $750.00, and secured claims of $3,212.00 which would leave $3,418.00 available for distribution to the unsecureds.

Ignoring for a moment the impact of the previous discharge, and assuming the list of unsecured creditors is correct, this available surplus would result in a 7.9% repayment of the unsecured claims. If applied only to repayment of student loans the surplus would allow for a 12.8% payback of the four student loans.

The plan was strenuously objected to by the Bank of North Dakota, holder of an unsecured student loan claim, arguing that the plan was not filed in good faith. The plan came on for confirmation hearing on April 25, 1990, at which time this court, mindful that the Debtors had obtained a pre-conversion discharge of the very unsecured debts rescheduled in the converted case, asked the Debtors' attorney what debts remained for treatment under the Chapter 13. Counsel replied that he assumed a conversion brought everything back to square one—that the discharge was of no effect.[1] The Debtors then orally

---

**1.** This court during its inquiry from the bench made the statement that the Debtors' only remaining debt, in view of the discharge, was $2,000.00 of student loans. This amount is an error and doubtless was made with reference only to the $2,065.00 due the Bank of North Dakota as reflected in the bank's plan objection. A $2,065.00 debt is de minimis and indeed would have been one hundred percent paid off by the very terms of the plan which allows for a

moved for revocation of the Chapter 7 discharge which was denied. It was and remains this court's opinion, as will be discussed, that given the event of the prior discharge, the only purpose in converting was to wipe out student loan debt—debts not normally dischargeable in Chapter 7. At the hearing, counsel for the Debtors conceded this was the probable result saying the only debts left are the educational loans which the Debtors are now seeking to discharge. On this basis the court determined the plan to have been filed in bad faith and denied confirmation from which appeal resulted.

2.

Under section 706(a) of the Code a Chapter 7 debtor has an absolute right to convert the case from a Chapter 7 to Chapter 11, 12 or 13 at any time and may do so even after having obtained a Chapter 7 discharge. Conversion, however, does not undo the effect of a previously granted discharge. Orders granting discharges to Chapter 7 debtors are accorded a special degree of finality. On this point the decision of *In re Tuan Tan Dinh*, 90 B.R. 743 (Bankr.E.D.Pa.1988) is instructive:

> [T]he finality of a discharge order must be accorded special consideration. In that sense it is like a confirmation order in a Chapter 11, 12 or 13 case, which will not be vacated for even the clearest of equitable grounds ... A confirmation order may generally be vacated only if fraud is alleged to have been perpetrated in its procurement, and even then only if a motion to revoke it is filed within 180 days after its entry ... the same is true of a discharge order.

90 B.R. at 745.

Neither section 706(a) allowing for conversion or section 348 setting forth the effect of conversion, provide for the vacation or revocation of an order for discharge. The Code itself limits revocation of a discharge to very special circumstances and then only if the motion is brought by a *trustee* or *creditor* within specified time parameters.

11 U.S.C. § 727(e). Revocation is available under the Bankruptcy Code in only three instances: where obtained through fraud, or the debtor fraudulently secreted estate property or where the debtor failed to obey a court order. In the instant case the oral motion for revocation was brought over one year after the discharge had been granted and was brought by the Debtors themselves, not by the trustee or a creditor. Moreover, none of the statutorily enumerated grounds for revocation were alleged. Revocation of the discharge, once granted, was simply not a remedy available to the Debtors.

A discharge under Chapter 7 has the effect of discharging a debtor from all debts that arose before the date of the order for relief except as provided in section 523. 11 U.S.C. § 727(b). The effect, then, of this court's March 9, 1989 discharge order was to discharge the Debtors from all liability on the unsecured debts listed on their Chapter 7 schedules—virtually the same debts rescheduled in the converted case, with the exception being as to any debts nondischargeable under section 523. At the time of conversion the only debts remaining amenable to treatment under Chapter 13 were debts in consequence of educational loans because, except for certain situations, student loans are nondischargeable by virtue of section 523(a)(8).

Chapter 13 is attractive to anyone with nondischargeable student loan obligations because the discharge under Chapter 13 is broader under section 1328 than it is under section 706(a) and allows discharge of debts not dischargeable in a Chapter 7. Thus, a student loan not amenable to being discharged in Chapter 7 can be discharged in a Chapter 13. *In re Winthurst*, 97 B.R. 457 (Bankr.C.D.Ill.1989). At this juncture it is well to remember that the policy behind the more liberal discharge provisions of Chapter 13 and the automatic right to convert into that Chapter is to give a debtor the right to repay his debts. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 380

---

$3,418.00 payment to the unsecureds. In reaching its finding of bad faith the court, while not articulating it from the bench, had in mind the

total amount of the outstanding student loans as one of the criteria.

(1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 94 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5880, 6336.

■ Confirmation of any Chapter 13 plan is contingent upon the satisfaction of 11 U.S.C. § 1325(a)(3) which requires that, "the plan has been proposed in good faith and not by any means forbidden by law." *In re LeMaire*, 898 F.2d 1346, 1347 (8th Cir.1990). The mere conversion of a Chapter 7 into a Chapter 13 is not per se bad faith nor is the fact of a successive filing or conversion. *See generally In re Baker*, 736 F.2d 481 (8th Cir.1984). It is, however, a factor to consider. The Circuit in *Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir.1987), determined that an analysis of whether a plan was filed in good faith is an inquiry focusing upon whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13. This analysis requires consideration of the totality of the circumstances with particular focus upon the type of debt to be discharged, whether the debt would be nondischargeable in a Chapter 7, and whether the debtor has unfairly manipulated the Code. *Id.* at 1222. In the recent 1980 en banc decision of *In re LeMaire, supra,* the court reiterated the necessity of reviewing the totality of the circumstances expressed in its earlier *Zellner* decision saying, "Factors such as the type of debt sought to be discharged, whether the debt is nondischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking Chapter 13 relief are particularly relevant." *Id.* p. 1346. In *In re Estus*, 695 F.2d 311 (8th Cir.1982), the court observed that the fact that the debt would be nondischargeable in a Chapter 7 is closely linked to the debtor's motivation and sincerity. This consideration, in turn, invokes a consideration of public policy as expressed in section 523 prohibiting the discharge of certain types of debts including student loans and which was again recognized in *In re LeMaire, supra,* at 1352, as an appropriate consideration in issues of good faith.

■ In the case at bar, the Debtors went into their Chapter 7 case with $41,081.00 of unsecured debt and benefited by the complete shedding, through discharge, of $14,391.90 of unsecured claims. A year after having obtained the benefits of a Chapter 7 discharge, the Debtors, apparently concerned over their continuing liability on the nondischarged educational loans, petitioned the court for reopening the case in order to challenge their nondischargeability. Instead, upon case reopening, they converted to a Chapter 13 with the sole and overriding purpose being to discharge an otherwise undischargeable debt. Their other Chapter 7 unsecured creditors who might legitimately have raised objections to a Chapter 13 plan and otherwise shared in a Chapter 13 distribution, cannot because their claims have been discharged—they are no longer creditors of the estate. The only creditors remaining are the holders of unpaid student loans which formerly comprised sixty-five percent of the unsecured debts but whose claims now comprise one hundred percent of the unsecured debts. So, the debtors, having already received a discharge in this case under Chapter 7 now seek a second discharge—this time to shed the nondischargeable student loans. The plan creates a de facto distinction between holders of student loans who get a twelve percent payback and the holders of other unsecured claims who, because of the previous discharge, have no cognizable claim and receive nothing. Such a differentiation would not be permissible in a typical Chapter 13 because no plan may discriminate between holders of claims that are substantially similar. *See* section 1322(b)(1) and section 1122(a). This would, however, be the effect of confirmation. The Debtors' motivation and intent to escape nearly all liability "hardly comports with the true spirit and purpose of Chapter 13". *In re Sanders*, 28 B.R. 917, 922 (Bankr.D.Kan. 1983). Had this court known that conversion from Chapter 7 to Chapter 13 was at the root of the Debtors' motion to reopen, the motion would not have been granted in the first place. Most courts regard a post-discharge conversion into Chapter 13 to be lacking in sincerity:

"Once the Chapter 7 discharge has been granted the debtor's personal liability is extinguished, thus rendering conversion

to Chapter 13 meaningless except as to those creditors holding nondischargeable claims. Further, to hold that a debtor has the right to convert to a Chapter 13 notwithstanding the grant of a Chapter 7 discharge would have the potential of allowing a debtor to receive a discharge in the same case under two mutually exclusive chapters of the Bankruptcy Code."

*In re Jones,* 111 B.R. 674, 680 (Bankr.E.D. Tenn.1990). All three factors pointed out by the Circuit as being relevant to a determination of bad faith are present.

Accordingly and for the foregoing reasons, this court, upon reconsideration finds the Debtors' Chapter 13 plan to have been filed in bad faith and denies its confirmation.

SO ORDERED.