**In re Annette KILKER.**

**Bankruptcy No. 91–14100S.**

United States Bankruptcy Court,
W.D. Arkansas,
Texarkana Division.

April 19, 1993.

---

**10.** Fed.R.Civ.P. 12(h)(3) is made applicable to this proceeding by Fed.R.Bankr.P. 7012.

Wm. Randal Wright, Hope, AR, for debtor.

Claude Hawkins, Fort Smith, AR, Karen Osborne, U.S. Dept. of Justice, Washington, DC, for U.S.

Frederick Wetzel, Little Rock, AR, Trustee.

### ORDER DENYING MOTION TO CONVERT

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the debtor's Motion to Convert filed on September 25, 1992. The debtor, a real estate broker, filed her Chapter 7 case on August 2, 1991, the schedules for which, filed on August 29, 1991, listed assets of $185,000 and debts of $160,000. Many of the real property assets were abandoned by the trustee. Discharge of the debtor was entered on January 15, 1992, and a report of no distribution filed by the trustee on September 14, 1992. There remained open resolution of pending disputes between the debtor and the Internal Revenue Service. The last of these matters was resolved when the Court held that the United States held a valid federal tax lien on all property and rights to property of the debtor. *Kilker v. Internal Revenue Service*, 145 B.R. 300 (Bankr.W.D.Ark.1992). The motion to convert was filed fifteen days later.

The United States objected to the motion to convert asserting that debtor is ineligible to be a debtor under Chapter 13 because the motion was filed in bad faith and solely for purposes of delay. The United States further asserted that the debtor does not have regular income and is unable to submit a feasible plan. On December 31, 1992, the debtor submitted amended schedules I and J relating to income. The only information regarding any plan proposal is the debtor's testimony that she can pay the Internal Revenue Service debt over five years.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(A), (O).

The debtor first asserts that the debtor has an absolute right to convert to Chapter 13 under section 706(a). However, this is true only if she is otherwise eligible for Chapter 13. 11 U.S.C. § 706(d); *Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797, 803 (3d Cir.1985). The United States asserts that the debtor is ineligible for Chapter 13 relief because the motion is filed in bad faith and because the debtor does not have regular income.

The Eighth Circuit has set forth guidance on the issue of good faith in the Chapter 13 setting. *See Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346 (8th Cir.1990) (en banc). *LeMaire* sets forth several factors, modified from the factors initially stated in *In re Estus*, 695 F.2d 311, 316 (8th Cir.1982).[1] *LeMaire* advised that good faith depends upon,

> [W]hether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code.

*LeMaire* at 1349. The Eighth Circuit reaffirmed the "totality of the circumstances" test and set forth the "particularly rele-

---

1. The *Estus* factors were subsumed by the addition of section 1325(b) of the Bankruptcy Code in 1984. *LeMaire,* 898 F.2d at 1349.

vant" factors to be applied in light of the purposes of Chapter 13:

> The type of debt sought to be discharged and whether the debt is nondischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking Chapter 13 relief.

*Id.* at 1349.

The Court finds that the debtor has not only inaccurately stated her debts and expenses and attempted to mislead the court, but has also unfairly manipulated the Bankruptcy Code. Thus, applying any of the three alternate standards, the first prong of the test set forth in *LeMaire* is met. Secondly, the additional factors indicate that the motion to convert to Chapter 13 is filed in bad faith such that the debtor is ineligible for relief under Chapter 13 of the Bankruptcy Code.

The petition asserts that the debtor has only six creditors, all of whom are secured. In fact, there are only five creditors since the debtor listed the Internal Revenue Service twice. Four of the creditors are secured by parcels of real property owned by the debtor. All schedules indicate the intent to reaffirm two of the debts on real property, the debt securing her home and the debt securing a duplex.[2] The other two parcels of property were surrendered to the creditors.

The debtor is clearly attempting to unfairly manipulate the Bankruptcy Code. This is evidenced by numerous facts. First, the debtor is not insolvent. The schedules list no unsecured creditors, a total debt of $160,000 and assets valued at $185,000. The debtor testified, and the schedules corroborate, that the sole reason for filing this Chapter 7 petition in bankruptcy was to avoid collection of a $28,000 debt to the United States for federal income taxes. This case was initially filed as a Chapter 7 proceeding because the debtor believed the United States to be unsecured. In Chapter 7, this unsecured debt would have been discharged. 11 U.S.C. § 507(a)(7), 523(a)(1). It was not until after

the Chapter 7 was filed, however, that the debtor realized that the tax debt was secured inasmuch as the United States had properly and timely recorded a Notice of Federal Tax Lien. Upon learning that the perfected lien existed, the debtor sought to avoid the lien. *See Kilker v. Internal Revenue Service,* CML No. 92–77 (filed May 26, 1992). On September 10, 1992, the Court ruled that the United States held a valid federal income tax lien which could not be avoided on the bases asserted by the debtor. The legal effect of this was to deprive the debtor of the purpose for which she filed the Chapter 7: the tax debt still exists. Once discharge is entered and a report of no distribution filed, no automatic stay exists to prevent the Internal Revenue Service from seizing the debtor's property to satisfy its secured indebtedness. Two weeks after the Court ruled that the lien was valid, and ten days after the trustee filed his report of no distribution, the debtor filed her motion to convert.

The debtor filed a Chapter 7 petition, at a time she was clearly solvent, when she had no trouble paying her debts, as indicated by the lack of creditors. Indeed, her schedule J, filed in 1992, indicates that she had surplus income of over $500 per month after paying the expenses she bothered to list. The Chapter 7 petition listed only those items with respect to which financial transactions would occur—surrender of property or reaffirmation of debt. No other creditors were listed on the petition or even given notice of the bankruptcy. A careful reading of the schedules indicates that other debts do in fact exist. For example, the debtor claims an exemption in a vehicle, but lists no creditor with respect to that vehicle. The debtor's schedule of expenses indicate a monthly payment for a vehicle. Thus, the schedules indicate a debt which has not been listed. The creditor has never been served with notice of the bankruptcy, and the Court, trustee, and other creditors were never advised of the debt. It is clear that the debtor neither needed nor wanted

---

**2.** There are no reaffirmation agreements in the file. However, it appears that the creditor on the home is oversecured, and the creditor on the

duplex is undersecured by an amount less than $1,000.

bankruptcy: the filing was simply a method by which to avoid paying her federal income tax, despite the fact she did not need a "fresh start."

The most important evidence that the debtor unfairly manipulates the Bankruptcy Code is the fact that the information she places on her schedules changes in accord with the relief sought. For purposes of Chapter 7 the debtor has no income. For purposes of Chapter 13, the debtor has commission income derived from being a real estate broker. Amazingly, for purposes of her federal income taxes, her income is from a different source. For federal tax purposes, her income is derived from rental property. These factors not only indicate fraud for which a discharge could be denied, but are direct evidence of an attempt to unfairly manipulate the Bankruptcy Code. A debtor may not alter her financial information for purposes of obtaining particular relief. The debtor has an affirmative duty to list all income, all expenses, and open all financial transactions to the trustee, Court, and creditors. The blatant and fraudulent manipulation of information on the schedules to obtain a particular result is an unfair and insidious abuse of the bankruptcy process.

Finally, the debtor has already received her discharge and a report of no distribution has been filed. One court has held that a debtor may not convert to Chapter 13 after discharge in a Chapter 7. *In re Jones,* 111 B.R. 674 (Bankr.E.D.Tenn.1990). While the plain meaning of the statute indicates that the maneuver may in fact be performed, it is further evidence, at least in this case, of the unfair manipulation of the Code.

In addition to the unfair manipulation of the Bankruptcy Code, the debtor failed to state her debts and expenses accurately and also made many fraudulent misrepresentations to mislead the bankruptcy court. *LeMaire* at 1349. The debtor testified to numerous, material inaccuracies on her schedules. The schedules were initially filed with the petition on August 2, 1991. Complete schedules were submitted on August 29, 1991. Finally, amended schedules

I (Current Income) and J (Current Expenditures) were filed on December 31, 1992. Although filed, these amended schedules have never been signed by the debtor.

The original schedules filed in August 1991, for purposes of obtaining a Chapter 7 discharge, assert that the debtor has "0.00" income. The amended schedule I, filed in December 1992, for purposes of converting her case to a Chapter 13 proceeding, assert that the debtor has gross wage/commission income of $2,588.50 per month and net income of $2,588.50 per month. No other income is reported. When testifying at trial, the debtor stated that she never read the petition when she signed it and thus, for one and one-half years, she was unaware that she failed to report any income on the schedules.

The debtor also testified that the income listed was merely an estimated amount. For the 1991 tax year, the year in which she filed bankruptcy, the debtor declared gross business income of 34,000 and $5,000 other income from "Reach for the Stars." Neither of these items was listed on her original schedules. When testifying regarding the amended schedule I, the debtor admitted that the amounts stated did not include all of her income. Indeed, she omitted entirely her income and expenses from the rental property she owned. The debtor's federal income tax returns, from 1988 to 1991, indicate that her income was derived from three different rental properties, none of which is itemized, as it must be under the Bankruptcy Code, on her schedules. The debtor asserts that since her expenses with regard to the properties equalled or exceeded the income, it was a "wash" such that she didn't schedule the items. The debtor testified that she does not in fact pay the mortgage on her home, but that an entity called Beck's Electric pays the mortgage. This income was not listed on her schedules. These are material omissions, which, had they been brought to the attention of the Court, would have been grounds for denial of the debtor's discharge. *See* 11 U.S.C. § 727(a). The explanation of a "wash" doesn't wash in bankruptcy. The debtor is required to "come clean" and list *all* income, all ex-

penses, and all financial transactions. The fact that she doesn't "depend" on particular income is not an excuse for failing to list the income.

*LeMaire* stated other factors to be analyzed by the Court in determining the good faith of a debtor, including the type of debt to be discharged, whether the debt is non-dischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking Chapter 13 relief. *LeMaire*, 898 F.2d at 1349. These factors should be examined in light of the purposes of Chapter 13. *Id.* at 1353. The Court file in this case, the testimony and demeanor of the debtor, and the documentary evidence submitted indicates that the debtor's motivations in seeking Chapter 13 are improper. As discussed above, there is direct evidence of the debtor's manipulation of the Bankruptcy Code as well as material false statements on her schedules, all pursued in an attempt to serve her ends.

The debt owed to the IRS is one that continues to exist as to the debtor's property by virtue of its secured status. The debtor first attempted to shed the debt in Chapter 7 and only moved to convert after that ploy did not achieve her goal. Had the debtor been sincere in her effort to repay debts under a Chapter 13 plan, she would have honestly provided all required information on her schedules.[3] Further, if the debtor's intentions had been honest, she would have filed a Chapter 13 in the first instance. There is no evidence that the debtor's circumstances changed in any manner from the date the petition was filed to present. The sole purpose for seeking this Court's protection, as admitted by the debtor, was to avoid paying a $28,000, ten-year old debt to the United States. The Chapter 7 bankruptcy filing occurred not because she had debts due in the ordinary course, but simply because she anticipated a collection action by the United States. *Compare Noreen v. Slattengren*, 974 F.2d 75 (8th Cir.1992) (plan filed in bad faith where filed to avoid having civil sexual abuse case go to trial); *In re Anderson*,

No. 92–10345, 1992 WL 170682, 1992 U.S.Dist. Lexis 10339 (D.Mass. July 1, 1992) (case properly dismissed where sole purpose was to avoid complying with orders of state court).

The debtor asserts that she has the means and desire to pay these taxes during a five year plan. However, this is the only debt she needs to place in a plan. She had no need of a "fresh start"; she was solvent on the day she filed bankruptcy; she was solvent on the date she filed her motion to convert; she apparently has no difficulty in meeting all other debts as they become due. Most importantly, the debtor seeks the relief of some provisions of the Bankruptcy Code, but disregards the provisions that do not comport with her personal goals. The debtor's demeanor and testimony at trial corroborate this finding of the Court. Neither her schedules nor her demeanor were consistent with truthfulness much less relief Chapter 13 was meant to provide for honest debtors. She is not eligible for Chapter 13 relief.

**ORDERED** that the debtor's Motion to Convert, filed September 25, 1992, is DENIED.

**IT IS SO ORDERED.**

---

**3.** Of course, had she done so, the abuse inherent in her Chapter 7 proceeding, 11 U.S.C. § 707(b),  ·  would have been even more apparent.