**In re Joel SCHWARTZ, Debtor.**

**Bankruptcy No. 893–84417–20.**

United States Bankruptcy Court,
E.D. New York,
at Westbury.

March 2, 1995.

Schlachter & Mauro, Reynold A. Mauro, Commack, NY, for debtor.

Flower & Medalie, Jeffrey Herzberg, Bay Shore, NY, for Chapter 7 Trustee.

Zavatsky & Mendelsohn, Allan B. Mendelsohn, Chapter 7 Trustee, Syosset, NY.

### MEMORANDUM DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

This matter comes before the Court upon a Notice of Motion, dated April 14, 1994, by Joel Schwartz ("Debtor") to convert his chapter 7 petition ("Petition") to one under chapter 13, or, in the alternative, to have the chapter 7 bankruptcy withdrawn. The chapter 7 trustee, Allan B. Mendelsohn, Esq. ("Trustee"), filed an Affirmation in Opposition to the motion. Debtor filed an Affidavit in reply to Trustee's Opposition.

Argument in support of and in opposition to the motion was heard on June 7, 1994 at which time the Court reserved decision and directed the parties to supply the Court with the transcript from the argument and also the transcript of the Debtor's 341 meeting of creditors ("341 Meeting").[1] The transcript from the June 7, 1994 hearing was supplied to the Court on February 9, 1995.

The Debtor's request for conversion or dismissal of the within Petition comes on the heels of the 341 Meeting wherein the Trustee alluded to the fact that a sale of the Debtor's real estate was imminent. Real estate holdings that at first were not to be found within

---

1. The 341 Meeting transcript of October 12, 1993 was transcribed by R & R Reporting. A copy of the transcript from the adjourned 341 Meeting on October 28, 1993 was transcribed by and provided from the law firm of Flower & Medalie, attorneys for the Trustee. No objection to the *form* has been interposed and the Court accepts the transcript. Debtor's counsel by letter dated July 28, 1994 did suggest that substantial "off the record colloquy" took place that had been omitted from the transcript. The Court need not respond to the omission of colloquy.

the confines of the Petition. A review of the Debtor's chapter 7 Petition, filed on August 5, 1993, a Petition that the Debtor signs:

*under penalty of perjury that the information provided in this petition is true and correct, ...*

indicates approximately $214,000.00 in liabilities, $3,800.00 in assets, no income and approximately $2,900.00 in expenses. The Debtor listed no real property in Schedule A, claimed a homestead exemption pursuant to "11 U.S.C. 522(d)" and listed one secured creditor in the amount of $138,482.56. "Marine Midland Mtg. Corp." holds a "mortgage on home."

The Debtor's address on his Petition is 12 Sunhill Road, Nesconset, New York 11767.

Debtor's employer in Schedule I is Onset International Corp., with an address of 12 Sunhill Road, Nesconset, New York 11767. Debtor's marital status is listed as "separated." Monthly income for Debtor is "none." There is no entry under spouse.

At the initial 341 Meeting the Debtor was advised by the Trustee that numerous errors existed in the Petition as filed. The 341 Meeting was adjourned and the Debtor contemplated rectifying the "numerous errors." At the adjourned 341 Meeting, it became apparent to the Debtor, as per the Trustee, that real estate owned by the Debtor would have to be sold. In the interests of retaining any equity that might exist, the Debtor indicated that he would exercise his option and either convert or dismiss his Petition.

With no applications or motions before the Court to the contrary, on December 14, 1993, the Debtor received his chapter 7 discharge in the usual course of business. Unfortunately Debtor and Debtor's counsel believed that their expression to the Trustee of an *intent* to do *something* would allow the proceedings to remain *status quo.*

*FIFTH: That in the intrum [sic] a discharge of Debtor was received and the receipt of the discharge came as a total surprise to the Debtor as the Debtor was* *under the impression that the matter was not going forward until such time as that the Debtor filed the amended Petition (Exhibit C) and said amended petition was never filed.*

*(Affidavit of Joel Schwartz, sworn to March 28, 1994, ¶ Fifth.)*

The amended Petition that was to be proffered at the next 341 Meeting is attached to Debtor's moving papers as Exhibit "B". Interestingly, Schedule A now had an entry:

*Description and Location of Property*

12 Sunhill Road
Nesconset, New York

*Nature of Debtor's Interest and Property*

title holder.

*Current Market Value*

$200,000.00 (approx.)

The amount of the secured claim did not change—$138,482.56.[2]

The Trustee's opposition is two-fold. The amended Petition that was offered to him accurately listed the Debtor's real estate holdings and set forth sufficient non-exempt equity that could be distributed to creditors. The fact that the Trustee would liquidate the Debtor's real estate holdings to pay off creditors is not cause within the meaning of 11 U.S.C. section 707 for the debtor to request dismissal. Additionally, the Trustee questioned how this Debtor would be able to offer a feasible plan under chapter 13. Schedule I reflects no income earning capacity. Debtor's testimony at the adjourned 341 Meeting confirmed that.

Debtor's rebuttal to his non-eligibility for chapter 13 is that he "will be able to demonstrate that he has commenced employment efforts, ...." (*Reply Affidavit of Reynold A. Mauro, Esq., sworn to on April 29, 1994,* ¶ *Fourth.*) Bolstering his previous statement, at oral argument on June 7, 1994, Debtor's counsel stated that the conversion to a chapter 13 would be successful as Debt-

---

**2.** By Notice of Presentment of Order Vacating Automatic Stay, dated June 24, 1994, Marine Midland Mortgage Corporation requested this Court to vacate the automatic stay pursuant to section 362(a) so that a foreclosure action could be commenced. The Court received no opposition and an Order was entered September 8, 1994.

or's wife was employed and Debtor was prospectively employed as a sales agent as of July 1994. Although she is not a debtor before the Court and is believed to be separated from the debtor, she is "helping paying the bills." (*Transcript, June 7, 1994, p. 8.*)

The Debtor's Reply Affidavit indicates that the Debtor, upon learning that his interest in real estate improperly valued and/or not accurately disclosed, was to be liquidated by the Trustee, chose not to file the amended Petition.

Debtor's counsel approaches the allegation of fraud in not listing all assets with a non-convincing air of naivete and casual indifference.

> MR. MAURO: ... With regard to the original petition, what happened was—and I have to take the fault of this—I had a paralegal do it, it stated "homestead exemption." There was no attempt to hide it from the Trustee. We met with the Trustee and sat down with the Trustee. There wasn't an interrogation. He asked if there was real estate and we said "yes." It states $2,000 value, not $200,000. There was no attempt to defraud the Court. This was at the initial meeting. To turn that into some kind of accusation of fraud, I think, is absolutely absurd. If there was an inquiry and he denied the existence of it under oath and the assets were destroyed and uncovered on an independent investigation, then that accusation would be appropriate. There was no such thing.
>
> THE COURT: Did you read the petition? Did you know if the Debtor owned a house. [sic]
>
> MR. MAURO: I signed both petitions. I assume that I midread [sic] the $200 as 2,000 or something like that. I, quite frankly, did not look closely. That is why we amended; the amendment wasn't filed when we considered all the ramifications.

(*Transcript, June 7, 1994, p. 7*).

## DISCUSSION

Section 706(a) of the Bankruptcy Code gives the chapter 7 debtor the unequivocal right to convert to chapter 13 without a hearing. It provides in pertinent part:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a).

 The Bankruptcy Code does not give a chapter 7 debtor an absolute right to dismiss the petition without a hearing.

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors; ...

11 U.S.C. § 707(a).

With respect to Debtor's request for dismissal of his chapter 7 Petition, this Court submits that the request is not made in good faith. Pursuant to section 707(a) "cause" must be demonstrated.

This Court has looked at the following factors present in this case to help it determine if cause exists:

1. the Debtor's repeated failure to file the "amended petition";

2. the motivation for the Debtor's request to dismiss—protecting his real estate interests; and

3. the timing of the motion—after the 341 Meeting where he learned that improperly valued assets would be utilized to pay Debtor's creditors.

The Court has not been presented with a scintilla of evidence that would justify dismissal. Rather, this Debtor has requested dismissal as a remedy for the ills in his Petition. That part of the motion is denied.

 The Fifth Circuit in *In re Martin*, 87 B.R. 20 (E.D.La.1988) aff'd 880 F.2d 857, 860 (5th Cir.1989) has held that the debtor has an absolute right to convert and the bankruptcy court's denial of "the conversion was improper." The ruling in *Martin* was one of pure statutory interpretation as the court left for another day the issue of what happens to the discharge and what effect the motion would have if granted after the dis-

charge. *Id.*. There appears to be an ability for this court to exercise its discretion.

In deciding whether or not to allow the Debtor to exercise his right to convert, courts have considered whether the chapter 7 debtor received his discharge, whether the debtor has requested that it be revoked and what effect a revocation of discharge would have on the creditor body. *In re Safley,* 132 B.R. 397 (Bankr.E.D.Ark.1991); *In re Jones,* 111 B.R. 674 (Bankr.E.D.Tenn.1990).

In those instances where a debtor's "absolute right" to convert has been exercised post-discharge, courts have looked beyond the absolute right to see what motivated the request. Those requests that were prompted for purposes of exploiting the system have been denied or conditioned. *In re Jeffrey,* 176 B.R. 4, 5 (Bankr.D.Mass.1994) (responding to the trustee's motion to reopen to liquidate a newly discovered asset, debtors requested conversion to chapter 13 was denied and the court found that to do otherwise would be to "tolerate a gross abuse of Chapter 7."); *In re Kilker,* 155 B.R. 201, 205 (Bankr.W.D.Ark.1993) (motion to convert denied on grounds that debts and expenses were inaccurately listed and information in petition was manipulated to conform with debtor's personal goals); *In re Tardiff,* 137 B.R. 83 (Bankr.D.Me.1992), vacated, remanded, 146 B.R. 499 (D.Me.1992), *aff'd* on remand, 145 B.R. 357, 362 (Bankr.D.Me.1992) (on remand, motion to convert post-discharge denied where motivation was to avoid paying tort creditor); *In re Spencer,* 137 B.R. 506, 516 (Bankr.N.D.Okla.1992) (court granted debtor's request to convert but conditioned it as "debtor's bad faith, abuse of jurisdiction and process, estoppel, and the like are not finally determined by this Order, but are merely continued for more opportune determination as the Ch. 13 case progresses;...."); *In re Safley,* 132 B.R. 397, 400 (Bankr.E.D.Ark.1991) (motion to convert denied where Court found that request was meaningless in light of chapter 7 discharge and debtor's inability to fund a chapter 13 plan); *In re Sieg,* 120 B.R. 533, 537 (Bankr.

D.N.D.1990) (debtor's request to convert post-discharge was denied and proposal of chapter 13 plan was found to be in bad faith).

Judge Stair when confronted with the issue of conversion to chapter 13 post-chapter 7 discharge denied the debtor's request. *In re Jones,* 111 B.R. 674 (Bankr.E.D.Tenn. 1990). The debtors in *Jones* did ask the court for conversion and a revocation of their discharge.[3] A reaffirmed creditor objected. Additionally the question of the debtors maintaining their employment was taken into consideration as Mrs. Jones anticipated a lay-off and would not be able to contribute to the funding of the chapter 13 plan as proposed. In denying the motion, the court opined:

> ... *the provisions of § 706(a) allowing a Chapter 7 debtor to convert to Chapter 13 "at any time" must be limited to those situations where the debtor's Chapter 7 discharge has not been granted or has been revoked upon motion of the debtor under the criteria set forth above. Once the Chapter 7 discharge has been granted the debtor's personal liability is extinguished, thus rendering conversion to Chapter 13 meaningless except as to those creditors holding nondischargeable claims. Further, to hold that a debtor has the right to convert to Chapter 13 notwithstanding the grant of a Chapter 7 discharge would have the potential of allowing a debtor to receive a discharge in the same case under two mutually exclusive chapters of the Bankruptcy Code.*

*Jones,* 111 B.R. at 680.

In 1991, Judge Scott encountered a factual scenario on par with the case at bar. *In re Safley,* 132 B.R. 397 (Bankr.E.D.Ark.1991). The debtor in *Safley* filed a chapter 7 and received her discharge. Subsequently the chapter 7 trustee learned that debtor's assets were not properly disclosed. Debtor's "claimed as exempt" assets were noticed for sale. In response, debtor requested conversion to chapter 13. The trustee objected on the ground that debtor's request was prompted by the impending liquidation. Taking into consideration the fact that Ms.

---

**3.** The motion before this Court seeks definitive relief through conversion or dismissal. However, paragraph eighth does request, "... this court grant him leave to withdraw the within chapter 7 proceeding and to nullify the discharge of Debtor previously issued herein."

Safley's income equalled her expenses which would impact negatively on her ability to pay pursuant to a plan, the motion was denied.

> The Court must presume the debtor in this case wishes to retain her discharge because she does not seek to set it aside and has pre-empted a creditor's attempt to revoke it with this Motion to Convert. In that case the evidence reveals there are no debts remaining for which she is liable. Her request to convert is meaningless. . . . Thus, even if the debtor could get over the eligibility and/or necessity hurdles outlined above she has no income to fund a plan. The entire procedure in this case is an exercise in futility.

*Safley*, 132 B.R. at 400.

With respect to this Debtor's request for conversion to chapter 13, the debtor has not filed amended schedules that would reflect either an increase in income commensurate with the expenses as listed or vice versa. A proposed chapter 13 plan was not offered. There has not been a demonstration of a good-faith motive prompting the within request. There is nothing to reorganize. The only secured creditor has had the automatic stay vacated and is presumably proceeding with a foreclosure sale. The unsecured debts have been discharged. American Express Travel Related Services Company, Inc. did file a timely non-dischargeability action. That adversary proceeding has been resolved and a stipulation of settlement was approved by this Court by Order dated December 19, 1994.

This Court could overlook a typographical error and an innocent miscalculation if such existed and be in the position of having to allow this Debtor the opportunity to exercise his absolute right. What the Court cannot overlook is this Debtor's *intentional* unwillingness to file the amended Petition so that the Trustee and the Court can have all the facts before it.

The Debtor was aware at the October 14, 1993 341 Meeting that substantial inaccuracies plagued his Petition. On October 28, 1993 a possible amended Petition was given to the Trustee:

> *ALLAN B. MENDELSOHN, ESQ.: Let the record show that they [sic] are no creditors present. Mr., um, Schwartz, there has been handed to me today, although I just got it and I understand that it has been filed with the Court, an amendment to your petition. Now you indicate now that the property you own at 12 Sun Hill Road, its current market value is approximately $200,000.00. Is that correct?*

*(October 28, 1993 Transcript).*

The Debtor having sighed in relief, later believed it was all straightened out.

> *MR. MAURO: . . . Actually, we didn't file the amended petition. When we returned to the second meeting with the creditors with the amended petition, we reviewed the petition regarding the real estate; the Trustee indicated to us there was sufficient equity in the asset. We didn't file the amended petition for the specific purpose of seeking leave to file Chapter 13, and even in anticipation of dismissal of a petition. This motion reiterates those facts.*
>
> *I do have an amended petition with me today, but it was never filed with the Court.*

*(June 7, 1994 Transcript, page 4).*

For reasons that escape this Court, Debtor and his counsel are unwilling to part with this amended Petition. An amended Petition that might have corrected the Debtor's errors and omissions. An amended Petition that would have erased the ambiguities before the Court and accurately reflected the Debtor's *eligibility* to be a debtor under chapter 13 and an *ability* to successfully complete a chapter 13 wage earner plan.

Having considered the Debtor's continued failure to file the amended schedules and Petition and the Debtor's inability to successfully convert, and the Court not being convinced that a conditional conversion would benefit the Debtor or the estate, this Court denies the Debtor's motion in its entirety.

**SO ORDERED.**