**In re Ricky Lynn JONES and Charlotte Faye Cutshaw Jones, formerly d/b/a R & C Enterprises operating as Checkers Pizza in Lenoir City, Debtors.**

**Bankruptcy No. 3-89-00830.**

United States Bankruptcy Court, E.D. Tennessee.

Feb. 22, 1990.

Wade M. Boswell, Knoxville, Tenn., for debtors.

Stone & Hinds, P.C., Steven D. Lipsey, Knoxville, Tenn., for Chrysler Credit Corp.

Michael H. Fitzpatrick, Knoxville, Tenn., Trustee.

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The debtors, Ricky Lynn Jones and Charlotte Faye Cutshaw Jones, filed a motion on December 28, 1989, requesting conversion of their Chapter 7 case to Chapter 13. Additionally, the debtors request revocation of their discharge granted under Chapter 7 (11 U.S.C.A. § 727(a) (West 1979 & Supp.1989)) on July 26, 1989. On December 30, 1989, the court entered an order setting a hearing on the debtors' motion for January 25, 1990. Chrysler Credit Corporation, a secured creditor whose debt was reaffirmed, objects to the relief sought by the debtors.

The issue the court is called upon to resolve is whether the debtors, having received a discharge under Chapter 7, may now convert their case to Chapter 13 and obtain revocation of their Chapter 7 discharge.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(O) (West Supp.1989).

## I

The debtors filed a joint voluntary petition under Chapter 7 on March 23, 1989. Their schedules, filed April 21, 1989, list twelve unsecured creditors holding claims totalling $69,024.50 and three secured creditors holding claims totalling $57,941.58. Two unsecured creditors, Internal Revenue Service (IRS) and the Tennessee Department of Revenue, hold claims in the scheduled amounts of $4,300 and $825, respectively. Secured creditors are Chrysler Credit Corporation, holder of a claim secured by a 1988 Plymouth Voyager van, Fidelity Federal Savings and Loan Association and Metropolitan Federal Savings and Loan Association. The latter creditors hold claims secured by deeds of trust encumbering the debtors' residence.

On May 15, 1989, a "Reaffirmation Agreement" was filed evidencing the debtors' reaffirmation of Chrysler Credit Corporation's debt in the amount of $16,032.10 plus $150.00 attorney's fee. Payments on this obligation are fixed under the "Reaffirmation Agreement" at the original contract rate of $254.55 per month. On July 26, 1989, the court held the reaffirmation hearing required under 11 U.S.C.A. § 524(d) (West 1979 & Supp.1989). The debtors' discharge was granted the same day.

The debtors now seek conversion of their Chapter 7 case to Chapter 13 and revocation of their Chapter 7 discharge. The reasons for the requested relief, set forth in testimony of the debtor, Ricky Lynn Jones, and in a "Memorandum Of Law" filed in support of the debtors' motion, are as follows:

(1) At the time they filed their Chapter 7 petition, the debtors were entitled to a $4,693 income tax refund from the IRS. They understood the refund would be set off against a $4,300 obligation owing the IRS as a result of unpaid FICA and withholding taxes associated with the operation of their business. The IRS, however, remitted the refund check directly to the debtors who turned it over to the trustee. The IRS will not be entitled to a dividend upon distribution of property of the estate as it did not file a proof of claim nor did the debtors file a claim in its behalf. The debtors, therefore, remain liable for the entire amount of the $4,300 nondischargeable IRS tax obligation.[1]

(2) Both debtors are gainfully employed. However, their employer has started laying off employees in anticipation of the phase out of its Knoxville plant. The debtors anticipate that Mrs. Jones will be laid off thereby causing a substantial reduction in their income.

In sum, the debtors contend that notwithstanding their Chapter 7 discharge they are left with a nondischargeable debt owing the Internal Revenue Service which now approximates $5,000, including penalty and interest. Additionally, it is apparent that the debtors are concerned about their ability to comply with the terms of their "Reaf-

---

1. The Tennessee Department of Revenue filed a proof of claim in the amount of $1,689. Of this amount, $1,286 is filed as an unsecured priority claim and the balance of $403 is filed as a general unsecured claim.

firmation Agreement" with Chrysler Credit Corporation in the event Mrs. Jones loses her job.

## II

This court, speaking through Judge Clive W. Bare, has previously held that a debtor was entitled to convert his Chapter 7 case to a case under Chapter 13 and to revocation of his Chapter 7 discharge, when the discharge was meaningless. *In re Caldwell,* 67 B.R. 296 (Bankr.E.D.Tenn.1986).[2]

A discussion of the facts in *Caldwell* is necessary to place the court's ruling on the revocation of discharge and conversion issues in perspective.

In 1979 three individuals (creditors) instituted a state court civil action against Mr. Caldwell and others for false arrest, false imprisonment, and malicious prosecution. The creditors alleged they had been the victims of a criminal escapade participated in by Mr. Caldwell's son during the Christmas holidays in 1978 and that Mr. Caldwell, an assistant chief of police with the City of Knoxville, took charge of the investigation, caused criminal warrants to be issued against them, and personally supervised their arrest. The criminal charges were subsequently dismissed. The resulting civil litigation ended in a jury verdict against Mr. Caldwell. At the conclusion of the appellate process, the creditors ended up with a judgment against Mr. Caldwell in the total amount of $40,000, representing compensatory and punitive damages.

On October 2, 1985, Mr. Caldwell filed a voluntary petition under Chapter 7 of the Bankruptcy Code. His only unsecured creditors were the creditors who obtained the $40,000 state court judgment. Two secured creditors were scheduled.

The creditors filed a complaint seeking a determination that the state court judgment entered against Mr. Caldwell was nondischargeable. On April 17, 1986, the court entered a Memorandum and Judgment granting a motion for summary judgment filed by the creditors after finding the state court judgment nondischargeable under 11 U.S.C.A. § 523(a)(6) (West 1979 & Supp.1989). Prior to the entry of the summary judgment, the court, on February 5, 1986, granted Mr. Caldwell a discharge pursuant to Code § 727(a). The order of discharge was, however, entered subject to the future outcome of the creditors' nondischargeability proceeding.

After obtaining new counsel, Mr. Caldwell, on June 9, 1986, filed a motion requesting revocation of his Chapter 7 discharge and conversion of his case to Chapter 13. On June 13, 1986, without a hearing, an order for relief was granted under Chapter 13. A hearing was scheduled on that portion of Mr. Caldwell's motion seeking revocation of his February 5, 1986 discharge.

The creditors opposed Mr. Caldwell's request for revocation of his Chapter 7 discharge. They also moved for reconversion

---

**2.** In addition to the discharge and conversion issues addressed in *Caldwell,* the court also confirmed the debtor's Chapter 13 plan. On appeal, the district court, in an unreported opinion, without discussing the bankruptcy court's revocation of Mr. Caldwell's Chapter 7 discharge, affirmed Judge Bare's ruling with regard to conversion from Chapter 7 to Chapter 13. The district court, however, vacated the bankruptcy court's order confirming the debtor's plan and remanded the case for reconsideration of the issue of good faith. The United States Court of Appeals for the Sixth Circuit vacated the decision of the district court and remanded to that court for an "explicit determination of whether the bankruptcy court's confirmation of the plan is based on clearly erroneous findings of fact, erroneous conclusions of law, or is neither factually nor legally in error." *In re Caldwell,* 851 F.2d 852, 855 (6th Cir.1988). Upon remand, the

district court, in a second unreported opinion, again failed to discuss the bankruptcy court's revocation of Mr. Caldwell's Chapter 7 discharge, but "specifically AFFIRM[ED] the bankruptcy court's decision to permit Mr. Caldwell to convert his Chapter 7 filing to Chapter 13." The district court then determined that the bankruptcy court's findings on the issue of good faith were clearly erroneous. The district court remanded the case once again to the bankruptcy court for further action consistent with its opinion. On February 9, 1990, the Sixth Circuit, agreeing "that the bankruptcy court's decision that Caldwell had acted in good faith was clear error," affirmed the decision of the district court. *In re Caldwell,* 895 F.2d 1123 (6th Cir. 1990). Judge Bare's ruling on revocation of Mr. Caldwell's Chapter 7 discharge and conversion to Chapter 13 remains intact.

of his Chapter 13 case to Chapter 7. A hearing was held on the revocation/conversion issues and on confirmation of Mr. Caldwell's plan.

In his determination that Mr. Caldwell's motion to revoke his Chapter 7 discharge should be granted and the creditors' motion seeking reconversion to Chapter 7 should be denied, Judge Bare stated:

Creditors insist this case should be reconverted to a case under chapter 7. The debtor responds that 11 U.S.C.A. § 706(a) (West 1979) gives a debtor in a chapter 7 case the absolute right to convert to a case under chapter 13. Further, the debtor asks the court to revoke the discharge granted to him while the case was pending under chapter 7. The debtor also challenges the creditors' right to resist revocation of the discharge since the discharge did not affect their rights, their debts having been held to be nondischargeable.

Section 706 of the Bankruptcy Code provides in pertinent part as follows:

*Conversion.*

(a) The debtor may convert a case under this chapter to a case under Chapter 11 or 13 of this title at any time, if the case has not been converted under § 1112 or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable....

11 U.S.C.A. § 706(a) (West 1979).

The language of § 706(a) is unequivocal. A debtor has an absolute right to convert a chapter 7 liquidation case to a chapter 11 reorganization case or a chapter 13 individual adjustment of debt case. (See House Rep. No. 95–595, 95th Cong., 1st Sess. 380, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5963, 6336; Senate Rep. No. 95–989, 95th Cong., 2d Sess. 94, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5880.) Congress, in its drafting of the Bankruptcy Code of 1978, did not in any way condition a debtor's right to convert under § 706(a) by limiting the exercise of that right to a time preceding the grant of a debtor's discharge.

. . . .

The creditors' motion to revoke the order converting this case to one under chapter 13, or to reconvert the case to one under chapter 7, will be denied.

As pointed out by the debtor, the discharge granted to him while the case was pending under chapter 7 is "meaningless," his only unsecured debts having been held to be nondischargeable. The debtor also testified that he had incurred no postpetition debts; thus no subsequent creditors can be affected.

This court can see no harm to any creditor by granting the debtor's motion to revoke the discharge. It would have been far better for the debtor to have requested the court to delay the granting of his discharge until after the dischargeability question was determined. He did not do so, however, and the discharge was granted. Since for all legal purposes the discharge is meaningless, the debtor's motion to revoke will be granted.

67 B.R. at 300–301.

The court in *Caldwell* premised its decision to allow revocation of the debtor's Chapter 7 discharge and conversion to Chapter 13 on three factors: (1) the language of § 706(a) which gives a Chapter 7 debtor the absolute right to convert to Chapter 13 "at any time"; (2) the lack of harm which would result to any creditor by granting Mr. Caldwell's motion to revoke his discharge; and (3) the "meaningless" effect of the discharge.

■ The factors giving rise to the court's ruling in *Caldwell* are not present in the instant proceeding. In *Caldwell,* all unsecured debts were determined nondischargeable and the discharge was, therefore, "meaningless." In the case *sub judice,* the debtors scheduled ten creditors holding general unsecured claims totalling $63,899.50. All of these claims were discharged by the July 26, 1989 discharge granted the debtors. The nondischargeable nature of the tax claim existing in favor of the Internal Revenue Service was known at the time the debtors filed their petition and upon the failure of the IRS to

file a proof of claim, the debtors had the right to file a claim in its behalf. *See* 11 U.S.C.A. § 501(c) (West 1979) and Fed.R. Bankr.P. 3004.

The court determined in *Caldwell* that no harm would result to creditors from revocation of the debtor's discharge. In the instant proceeding, the potential harm to Chrysler Credit Corporation and those unsecured creditors who filed proofs of claim is obvious. As a result of the May 15, 1989 "Reaffirmation Agreement," the debtors' obligation to Chrysler Credit Corporation survived their discharge. That agreement is enforceable and not subject to recision.[3] Revocation of the Chapter 7 discharge would arguably place the debtors and Chrysler Credit Corporation back in the position they occupied prior to discharge, thus giving the debtors the right under Code § 524(c)(4) to rescind the May 15, 1989 "Reaffirmation Agreement." A ruling which could result in recision by the debtors of a reaffirmation agreement thought to be enforceable many months ago would affect the integrity of the reaffirmation process and give rise to a potential for abuse by Chapter 7 debtors in the future.

**3.** Bankruptcy Code § 524(c) provides in material part:

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law ... only if—
> ....
> (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of recision to the holder of such claim....

11 U.S.C.A. § 524(c) (West Supp.1989).

**4.** The record does not conclusively establish the amount of the Internal Revenue Service refund turned over to the trustee. The debtors, in the "Memorandum of Law" filed in support of their motion, aver that the sum of $4,693 was delivered to the trustee. The court accepts this representation for purposes of this Memorandum.

**5.** *See supra* note 1.

Of equal importance in the instant proceeding is the harm which could result to general unsecured creditors upon revocation of the debtors' discharge and conversion to Chapter 13. At present, the trustee has in his possession a sum approximating $4,693.[4] The sole claim entitled to a priority of payment is a $1,286 claim filed by the Tennessee Department of Revenue.[5] General unsecured claims totalling $11,557.08 have been allowed.[6] The distribution scheme mandated for Chapter 7 cases under 11 U.S.C.A. § 726 (West 1979 & Supp. 1989) will result in the following distribution: (1) compensation to the trustee under 11 U.S.C.A. § 326(a) (West Supp.1989) in the amount of $320.79; (2) payment of the priority claim filed by the Tennessee Department of Revenue in the amount of $1,286; and (3) a dividend amounting to $3,086.21, or approximately 27%, to the holders of the $11,557.08 in allowed general unsecured claims.

The debtors clearly intend that revocation of their Chapter 7 discharge and conversion to Chapter 13 will benefit the IRS by providing it a second opportunity to file a proof of claim.[7] Should conversion to Chapter 13 occur, there is every likelihood that general unsecured creditors would receive little or nothing under a plan.[8]

**6.** Bankruptcy Code § 502(a) provides that "[a] claim or interest ... is deemed allowed, unless a party in interest ... objects." 11 U.S.C.A. § 502(a) (West Supp.1989). No objections have been filed to any claim.

**7.** The debtors' assumption that conversion to Chapter 13 will provide the IRS another opportunity to file a proof of claim, thus giving it a second chance to realize a portion of the $4,693 tax refund turned over to the Chapter 7 trustee, may be misplaced. Bankruptcy Rule 1019(3) provides for the commencement of a new claims bar date pursuant to Bankruptcy Rule 3002 upon conversion of a case from Chapter 11 or Chapter 13 to Chapter 7. Rule 1019(3) suggests, however, that a new claims bar date shall not commence if a Chapter 7 case has been converted to Chapter 13 and the time for filing claims had expired in the original Chapter 7 case.

**8.** The court questions the ability of these debtors to present a plan which could meet the confirmation requirements of 11 U.S.C.A. § 1325(a)(6) (West 1979 & Supp.1989). The debtors' schedule of current income and ex-

In sum, those factors leading the court in *Caldwell* to revoke the debtor's Chapter 7 discharge are not present in the instant proceeding. Application of the factors discussed by Judge Bare in *Caldwell* persuades this court that it would be harmful and manifestly unfair to Chrysler Credit Corporation and those general unsecured creditors who filed claims to revoke the debtors' discharge.

## III

· This court is mindful of the provisions of § 706(a) allowing a Chapter 7 debtor to convert to Chapter 13 "at any time." The court is also aware that orders entered by bankruptcy courts granting discharges to Chapter 7 debtors are accorded a special degree of finality. *In re Tuan Tan Dinh,* 90 B.R. 743 (Bankr.E.D.Pa.1988). In fact, the Bankruptcy Code provides for revocation of discharges granted under Chapter 7 only in accordance with Code § 727(d) and (e).[9] *See Matter of Morgan,* 668 F.2d 261 (7th Cir.1981); *In re Fischer,* 72 B.R. 111 (Bankr.D.Minn.1987); *Matter of Calabretta,* 68 B.R. 861 (Bankr.D.Conn.1987); *In re Gruber,* 22 B.R. 768 (Bankr.N.D.Ohio 1982); *Matter of McQuality,* 5 B.R. 302 (Bankr.S.D.Ohio 1980); 4 *Collier On Bankruptcy,* ¶ 727.15, at 727–105 n. 7a (15th ed. 1989). However, courts have not been inflexible on this issue. *See, e.g., In re Long,* 22 B.R. 152 (Bankr.D.Me.1982) (Where no party in interest objected, debtors entitled to order under Fed.R.Civ.P. 60(b) vacating discharge to render enforceable reaffirmation agreements); *In re Solomon,* 15 B.R. 105 (Bankr.E.D.Pa.1981) (Order granting discharge vacated for "sufficient equities" to permit consideration of reaffirmation agreement).

This court is of the opinion that in considering that aspect of the debtors' motion seeking revocation of the discharge, deference must be given to Code § 727(d) and (e). However, it cannot completely ignore equitable considerations such as those giving rise to the decisions in *Long, Solomon,* and *Caldwell.* The court in *Tuan Tan Dinh* observed:

[T]he finality of a discharge order must be accorded special consideration. In that sense, it is like a confirmation order in a Chapter 11, 12, or 13 case, which will not be vacated for even the clearest of equitable grounds.... A confirmation order may generally be vacated only if fraud is alleged to have been perpetrated in its procurement, and even then only if a motion to revoke it is filed within 180 days after its entry.... The same is true of a discharge order, in light of 11 U.S.C. §§ 727(d) and (e).

This is not to say that, under no circumstances, does a court ever have the power to vacate a confirmation order—or a discharge order—entered in error....

---

penditures filed April 21, 1989, evidences joint monthly take home pay totalling $2,684. Of this amount, $1,234 is attributable to Mrs. Jones' earnings and $1,450 is attributable to Mr. Jones' earnings. The debtors' monthly expenses are itemized at $2,745. If Mrs. Jones loses her employment, the debtors' monthly expenses will exceed their income by $1,295. Even if the $254 per month payment due Chrysler Credit Corporation under the terms of the debtors' "Reaffirmation Agreement" is deleted, the shortfall approximates $1,041.

**9.** Bankruptcy Code § 727 provides in material part:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; or

(3) the debtor committed an act specified in subsection (a)(6) of this section.

(e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—

(1) under subsection (d)(1) of this section within one year after such discharge is granted; or

(2) under subsection (d)(2) or (d)(3) of this section before the later of—

(A) one year after the granting of such discharge; and

(B) the date the case is closed.

11 U.S.C.A. § 727 (West 1979 & Supp.1989).

The Debtor ... suggests that the equitable considerations set forth in cases considering motions to vacate default judgments ... may be applied in considering both a Rule 59(e) and a Rule 60(b) motion. These considerations are as follows:

1. Whether the plaintiff will be prejudiced;

2. Whether the defendant has a meritorious defense; and

3. Whether culpable conduct of the defendant led to the default.

. . . .

The recitation of the factors enunciated as relevant to a motion to vacate a default judgment must be distilled somewhat in considering a motion to vacate a discharge order. There is no issue of a "meritorious defense" to such an Order. The issue of the merits of the position of the party seeking the order becomes merged with the issue of relative prejudice to other interested parties. The degree of culpability of the Debtor in allowing the unwanted discharge order to be entered, *i.e.*, the culpability of the moving party, also is a pertinent factor.

We believe that, when both the consideration of relative prejudice to the parties and his own lack of culpability in allowing the order to be entered tip very strongly in favor of the moving party, a bankruptcy court should be empowered to vacate an order of confirmation—or a discharge order—upon motion of the debtor. Therefore, we believe that, when no creditors object and all appear to concur in entry of such an order ... the courts properly granted the debtor's motion.

90 B.R. at 745–46 (citations omitted).

■ This court, adhering to the principles enunciated in *Tuan Tan Dinh*, concludes that a Chapter 7 discharge may be revoked upon motion of the debtor filed pursuant to Fed.R.Civ.P. 59(e) and/or 60(b),[10] incorporated into Fed.R.Bankr.P. 9023 and 9024, under the following circumstances: (1) when no creditor affected by the outcome objects and all appear to concur in the entry of an order vacating or revoking the order granting the discharge; (2) where the factors of relative prejudice to other interested parties and lack of culpability of the debtor in allowing the discharge order to be entered weigh strongly in favor of the debtor.

For reasons previously discussed, the debtors have not satisfied the criteria enumerated above. Their motion, insofar as it seeks revocation of the July 26, 1989 discharge, must be denied.

■ The court further concludes that the provisions of § 706(a) allowing a Chapter 7 debtor to convert to Chapter 13 "at any time" must be limited to those situations where the debtor's Chapter 7 discharge has not been granted or has been revoked upon motion of the debtor under the criteria set forth above. Once the Chapter 7 discharge has been granted the debtor's personal liability is extinguished, thus rendering conversion to Chapter 13 meaningless except as to those creditors holding nondischargeable claims. Further, to hold that a debtor has the right to convert to Chapter 13 notwithstanding the grant of a Chapter 7 discharge would have the potential of allowing a debtor to receive a discharge in the same case under two mutually exclusive chapters of the Bankruptcy Code.[11]

For the reasons set forth above, that aspect of the debtors' motion requesting conversion to Chapter 13 will also be denied.

---

**10.** A Rule 59(e) motion to alter or amend a judgment must be filed within ten (10) days after entry of the order or judgment. A Rule 60(b) motion contemplates relief on the basis of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or "any other reason justifying relief from the operation of the judgment." A Rule 60(b) motion "shall be made within a reasonable time."

**11.** Discharges under Chapter 7 are governed by 11 U.S.C.A. § 727 (West 1979 & Supp.1989). Discharges under Chapter 13 are governed by 11 U.S.C.A. § 1328 (West 1979 & Supp.1989). The provisions of Chapters 7 and 13 have application only to cases filed under the respective chapter. 11 U.S.C.A. § 103 (West 1979 & Supp. 1989).

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. An order denying the debtors' motion seeking revocation of their Chapter 7 discharge and conversion to Chapter 13 will be entered.