In re Kathleen D. MOSBY, Debtor.

In re Michael E. Coleman, Sandra M. Coleman, Debtors.

Bankruptcy Nos. 99–11319–RGM, 99–12231–RGM.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Jan. 12, 2000.

Stephen J. Sheehy, III, Annandale, VA, for Kathleen D. Mosby.

Richard Owen Bolger, Law Office of Richard Owen Bolger, Fairfax, VA, for Michael E. and Sandra M. Coleman.

Gerald M. O'Donnell, Alexandria, VA, Chapter 13 Trustee.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL,
Bankruptcy Judge.

The question presented in each of these chapter 13 cases is whether a debtor who files initially under chapter 7 may, after receiving a discharge, convert his or her case to chapter 13. The debtors acknowledge the anomaly of proceeding in chapter 13 after having already been granted a chapter 7 discharge in the same case but seek to rectify that situation by having the court vacate the discharge. The chapter 13 trustee questions whether there is any legal authority to do so and has moved in each case for dismissal. A hearing was held on December 7, 1999, at which the debtors were present by counsel and the chapter 13 trustee was present in person. Because the issue has been arising with increasing frequency, and will doubtless recur, the court took the motions in each case under advisement to review the applicable law. For reasons that will be discussed, the court concludes that insufficient grounds have been shown for vacating the discharges, but that the existence of an unvacated chapter 7 discharge does not constitute a bar to conversion or to confirmation of a chapter 13 plan, provided the plan is proposed in good faith and otherwise meets the requirements for confirmation.

### Facts

A. *Kathleen D. Mosby, Case No. 99–11319.*

Kathleen D. Mosby, a self-employed clinical psychologist, filed a voluntary chapter 7 petition in this court on March 16, 1999. The debts listed on her schedules included $38,000 in Federal and state priority taxes and $103,843 in unsecured claims, primarily credit card debt. Among her assets were an office condominium with little apparent equity and a single

family home. The schedules showed the home as having a market value of $180,000 and as being subject to a deed of trust in the amount of $128,000. Her schedules reflected a net monthly income of $3,500 and monthly expenses of $3,554. While not entirely clear from the representations of counsel at the hearing, it appears that the chapter 7 trustee, Ann E. Schmitt, advised debtor's counsel that she intended to market the house. On June 25, 1999, the debtor was granted a discharge. Approximately two months later (August 31, 1999) the debtor filed a notice of conversion to chapter 13, and the clerk entered an order of conversion the same date.[1]

With the notice of conversion the debtor filed a chapter 13 plan under which she proposed to make payments to the chapter 13 trustee of $625 per month for 60 months. From those funds, the trustee would pay $27,470 on account of priority tax claims and an estimated 6% dividend to unsecured creditors. The deeds of trust on the home and condominium would be paid outside the plan. Amended schedules of monthly income and expenses were filed reflecting net income of $5,550 and expenses of $4,925.[2] The trustee filed a motion to dismiss the case on the basis of unreasonable delay by the debtor.[3] The

debtor, apparently in response, then filed on October 25, 1999, a motion to vacate the chapter 7 discharge so as to permit her to proceed in chapter 13. It is that motion, together with the trustee's motion to dismiss, that are currently before the court.

B. *Michael E. and Sandra M. Coleman, Case No. 99–12231.*

Michael E. Coleman, a telephone company systems technician, and his wife, Sandra M. Coleman, a medical receptionist, filed a joint voluntary chapter 7 petition in this court on April 28, 1999. Their schedules reflected secured debts against their home and car, all of which they proposed to reaffirm, plus $37,677 in unsecured claims, mostly credit card debt. On their schedule of assets they listed a townhouse valued at $150,000, subject to three liens totaling 147,825.[4] They did not claim any interest in the property as exempt. Their schedules reflected net monthly income of $4,127 and monthly expenses of $3,980. Ann E. Schmitt was appointed as trustee, and on August 4, 1999, filed with the clerk a request to designate the case as an "asset" case. On August 13, 1999, the debtors were granted a discharge in the ordinary course.[5]

---

1. The debtor had previously filed a notice of conversion on August 13, 1999, but failed to pay the required conversion fee. When the deficiency was not cured, the notice of conversion was struck.

2. The original and amended schedules of income and expense are not directly comparable because of the different way they approach the debtor's payment of taxes. The debtor is self-employed, and so presumably makes quarterly estimated tax payments. On her original income schedule, however, she showed the estimated tax payments as though they were withheld from the gross income she received from her practice. On the amended schedules, her tax payments have been moved from the income schedule to the expense schedule and have apparently been fine-tuned in amount. The major difference between the two sets of schedules is the addition of $550 per month in rental income.

3. The motion does not set forth the facts constituting the alleged "delay." From what the

court could discern at the hearing, the trustee's actual ground of complaint is that the debtor had already received a discharge, leaving, in his view, no debts to be dealt with by the plan. That, however, would not be strictly true in any event, since the priority tax debts are not dischargeable and would remain a liability even after discharge.

4. As will be seen, they now acknowledge that the liens against the property total no more than $108,680. (The proofs of claim filed by the lien holders reflect that the actual amount is $107,663.) How the debtors arrived at the higher figure shown on their original schedules remains unexplained.

5. Because of an apparent data processing glitch in the clerk's office, the discharge was then reissued on August 14 and August 18, 1999. August 13, 1999, however, remains the effective date of discharge.

Approximately three weeks later (September 3, 1999) the debtors filed a motion to convert to chapter 13. According to counsel for the debtor, the reason for the conversion was that the debtors, because of the "substantial equity" that they had in their townhouse, were "relying" on a long-held IRS position that a bankruptcy trustee did not succeed to a taxpayer's right to exclude capital gains from the sale of a personal residence.[6] In August 1999, it is asserted, the IRS abandoned that position, making the sale of the house more attractive to the trustee. In any event, an order was entered by the clerk on September 14, 1999, converting the case to chapter 13. Following the conversion, the debtors filed amended schedules reflecting only $108,-680 in liens against the townhouse. The amended schedules now showed $4,492 in net monthly income and $4,023 in monthly expenses. On September 29, 1999, the debtors filed a proposed chapter 13 plan under which they would pay the chapter 13 trustee $467 per month for 56 months. Their car loan would be bifurcated into secured and unsecured components, with the secured portion being paid over 56 months at what is apparently the contract rate of interest. The projected dividend on unsecured claims is 33%. The three loans against the house—all of which are shown as being current—would be paid directly by the debtors. On October 5, 1999, the chapter 13 trustee filed a motion to dismiss for delay prejudicial to creditors. The debtors then filed on December 6, 1999, the motion that is currently before the court to vacate their chapter 7 discharge in order to proceed in chapter 13.

### Discussion

Both motions to vacate implicitly acknowledge an inconsistency between chapter 13 relief and the earlier granting, in the same case, of a chapter 7 discharge. Nevertheless, as a threshold issue, the court must determine whether there is indeed anything in the language or structure of the Bankruptcy Code that actually prohibits a debtor from obtaining confirmation of a chapter 13 plan after having already received a chapter 7 discharge in the same case. If so, the court must then determine whether the chapter 7 discharge may be vacated at the debtor's request so as to allow the case to proceed under chapter 13, and, if so, whether the facts in the two cases before the court justify such relief.

### I.

### A.

█ Turning to the first issue, there is nothing in the Bankruptcy Code that expressly bars a conversion from chapter 7 to chapter 13 after a discharge has been granted. Nor, for that matter, does any provision of the Bankruptcy Code in express terms require, as a condition of such conversion, that the chapter 7 discharge be vacated. The statutory language is straightforward and seemingly confers an absolute right to convert "at any time" so long as the case was not previously converted to chapter 7 from some other chapter:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

§ 706(a), Bankruptcy Code. Although many of the reported lower court decisions have strongly challenged the notion that

---

6. A number of bankruptcy courts had rejected the IRS position, but there had been no definitive ruling in this district or by the Fourth Circuit. Hence, the uncertainty factor may have increased the likelihood that a trustee would abandon real estate when the debtors' basis in the property was low. Nevertheless, it is difficult to see how the debtors could have "relied" on an IRS position that had been successfully challenged with some frequency.

the right to convert is "absolute,"[7] the reported cases at the court of appeals level, including the Fourth Circuit, have held that only the most egregious circumstances could justify denial of what is otherwise a clear statutory right. Thus, conversion has been allowed both after the debtor received a chapter 7 discharge, *Martin v. Martin (Matter of Martin)*, 880 F.2d 857 (5th Cir.1989), and, perhaps more surprisingly, after the debtor had been *denied* a chapter 7 discharge based on fraudulent post-petition transfers of property. *Finney v. Smith (In re Finney)*, 992 F.2d 43, 44 (4th Cir.1993) ("[C]ongress intended § 706(a) to confer 'the one-time absolute right' to convert from liquidation to reorganization, because 'the debtor should always be given the opportunity to repay his debts.'"). Additionally, a leading commentator supports the view that nothing in the language or structure of the Bankruptcy Code prohibits a post-discharge conversion from chapter 7 to chapter 13: "Indeed, a debtor may request conversion even after a chapter 7 discharge has been entered. Since the Code makes no provision for revocation of the discharge in that event, the discharge remains operative and the converted case may proceed on that basis." 6 Lawrence P. King, Collier on Bankruptcy ¶ 706.02 at 706–4 (15th ed. rev.1999). In *Martin*, however, the court expressly did not reach "the question of what happens to the discharge or the underlying debt when the motion to convert is granted after the discharge." 880 F.2d at 860. Additionally, *Finney*, although holding that the debtor had the right to convert from chapter 7 to chapter 11, ruled that he had no right to *remain* in chapter 11 if the conversion was motivated by bad faith and reorganization was objectively futile.[8]

### B.

Although *Finney* involved a conversion to chapter 11 rather than chapter 13, the statutory language is the same, and it seems clear that the Fourth Circuit would hold that a conversion from chapter 7 to chapter 13 could be denied, if at all, only in the most egregious circumstances.[9] At the same time, *Finney* makes it clear that, notwithstanding the debtor's statutory right to convert, the case may, after appropriate notice and hearing, be reconverted on the court's own motion. The issue is thus squarely presented whether the existence of a chapter 7 discharge in the same case is fundamentally inconsistent with proceeding under chapter 13.

---

7. *See, e.g., In re Jones*, 111 B.R. 674, 680 (Bankr.E.D.Tenn.1990) ("[T]he provisions of § 706(a) allowing a Chapter 7 debtor to convert to Chapter 13 'at any time' must be limited to those situations where the debtor's Chapter 7 discharge has not been granted or has been revoked upon motion of the debtor[.]"); *In re Jeffrey*, 176 B.R. 4, 6 (Bankr. D.Mass.1994) ("Where the debtors have already received a discharge, it is clear that their purpose in converting to chapter 13 is *not* to repay their creditors. Rather, their purpose is to evade their obligations under Chapter 7.") (emphasis in original); *In re Starkey*, 179 B.R. 687, 692 (Bankr.N.D.Okla. 1995) ("The words 'at any time' refer literally to any stage in the progress of a case, not to any conditions which may develop during that progress, especially in an abnormal and abusive case."); and *In re Lesniak*, 208 B.R. 902, 906 (Bankr.N.D.Ill.1997) (articulating a "bright-line rule that would prohibit conversions from Chapter 7 to Chapter 13 if the request is made post-discharge").

8. *See Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir.1989) (dismissal of a chapter 11 case for want of good faith in filing requires a showing both of subjective bad faith and objective futility of any possible reorganization). In *Finney*, the Fourth Circuit held that the bankruptcy judge could consider *sua sponte* whether reconversion was appropriate, but ruled that the debtor had to be given a hearing if either bad faith or objective futility had not already been the subject of earlier hearings in the case.

9. Of course, it goes without saying that the right to convert is qualified by the need to meet the eligibility requirements set forth in § 109(e), Bankruptcy Code. *In re Safley*, 132 B.R. 397, 399 (Bankr.E.D.Ark.1991). Thus, a debtor without regular income, or whose noncontingent debts exceed the limits specified in § 109(e), may not convert to chapter 13.

There can be no question that chapter 7 and chapter 13 represent different paradigms of debtor relief. In chapter 7, the debtor surrenders for distribution his or her nonexempt property and receives a "fresh start" in the form of a discharge which eliminates the debtor's personal liability on most kinds of debt. *See Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (bankruptcy "gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt."). Property acquired, and income earned, subsequent to the filing of the bankruptcy petition cannot be reached by creditors whose claims have been discharged. In chapter 13, by contrast, the debtor typically keeps all his or her property, whether or not exempt, but makes payments to creditors out of future income. The discharge granted in chapter 13 plan discharges more types of debts than does a chapter 7 discharge,[10] but the discharge is not granted until the debtor completes all payments required under the plan.

Perhaps the strongest argument against allowing a debtor to proceed in chapter 13 after receiving a chapter 7 discharge in the same case—at least where there are assets

the chapter 7 trustee can administer—was made by Judge Carol Kenner in *In re Jeffrey,* 176 B.R. 4, 6 (Bankr.D.Mass.1994):

> A chapter 7 case involves a *quid pro quo:* debtors receive a discharge and, in exchange, make full disclosure about their financial affairs, especially their assets, and surrender their nonexempt assets to the trustee for liquidation and distribution among creditors. * * * Having received a discharge, they cannot now ignore their obligation to surrender their assets for the benefit of creditors.

*Jeffrey* involved a debtor who had omitted a valuable tort claim from his schedules. After his case was reopened to permit the trustee to administer the cause of action, the debtor, without notice to the chapter 7 trustee, moved to convert to chapter 13. The court, finding that the conversion was not motivated by a desire to repay creditors but was simply an attempt by the debtor to evade his obligations under chapter 7, held that the conversion was "an abuse of bankruptcy process" and reconverted the case to chapter 7.[11]

A further concern where conversion occurs after a chapter 7 discharge has been issued is that conduct that would otherwise provide a basis for revoking the discharge—such as failure to abide by court orders or fraud that only comes to light

---

10. *Compare* § 523(a), Bankruptcy Code, which specifies 18 categories of debts that are not discharged under chapter 7, *with* § 1328(a), with excludes only 5 categories of debts. In one respect, however, the chapter 13 discharge is less comprehensive than a chapter 7 discharge, since it excludes long-term debts on which the debtor continues to make payments during a plan. § 1328(a)(1), Bankruptcy Code. Accordingly, upon completion of a chapter 13 plan a debtor remains personally liable on a home mortgage, while a chapter 7 debtor's personal liability would be discharged. In those Circuits that do not require reaffirmation as a condition of retaining collateral but allow a debtor who is not in default to continue to make the contractual payments, the effect is to transform the mortgage into a nonrecourse obligation.

11. It is the interference with the administration of the bankruptcy estate that distinguishes a post-discharge conversion from chapter 7 to chapter 13 from the so-called "chapter 20" scenario, in which a debtor first files under chapter 7 and, immediately upon receiving a discharge, files under chapter 13 in order to deal with nondischargeable obligations (such as priority tax debts) and secured claims surviving the chapter 7 discharge. *In re Cushman,* 217 B.R. 470, 474 (Bankr.E.D.Va.1998); *see also In re Hauswirth,* 242 B.R. 95 (Bankr.N.D.Ga.1999) ("To collapse the two proceedings into one ... is inimical to the structure of the Bankruptcy Code. Debtor's conversion to Chapter 13 before the Chapter 7 Trustee has completed the administration of the estate but after the discharge order is entered thwarts the proper operation of the Code[.]").

after the discharge is granted—may be effectively insulated from sanction. A complaint to revoke a chapter 7 discharge based on the debtor's fraud must be brought within one year after the discharge is granted. § 727(e)(2), Bankruptcy Code.[12] Moreover, the court is without power to enlarge that time. Fed. R.Bankr.P. 9024 and 9006(b)(2). Accordingly, a chapter 7 debtor in danger of having his or her discharge revoked based on fraud could simply convert to chapter 13, run the clock out while making half-hearted efforts at confirmation, and then reconvert to chapter 7, knowing that the previously-granted discharge was beyond challenge. *See, In re Lesniak,* 208 B.R. 902, 906–07 (Bankr.N.D.Ill.1997) (denying conversion where the debtors were not motivated by a desire to repay their debts or to provide a greater dividend to creditors but by "a desire to rid themselves of the Chapter 7 Trustee and place their future in the hands of a Chapter 13 Trustee, who can neither take possession of their property nor file a Section 727(d) complaint to revoke discharge.").

Additionally, many courts have reasoned that conversion to chapter 13 following the granting of a chapter 7 discharge makes no sense because the purpose of chapter 13 is the repayment of debts, and issuance of the discharge effectively means there are no longer any debts to pay. *In re Jones,* 111 B.R. 674, 680 (Bankr.E.D.Tenn. 1990) ("Once the Chapter 7 discharge has been granted the debtor's personal liability is extinguished, thus rendering conversion to Chapter 13 meaningless except as to those creditors holding nondischargeable claims."); *In re Sieg,* 120 B.R. 533, 535 (Bankr.D.N.D.1990) (chapter 7 discharge granted earlier in case left only nondischargeable student loan debts to be paid after conversion to chapter 13); *In re Safley,* 132 B.R. 397, 399–400 (Bankr.E.D.Ark. 1991) ("If a debtor has been granted a discharge in a Chapter 7 and does not seek

to set the discharge aside, then moves to convert the case to a Chapter 13, it follows that only those debts not discharged and/or secured debts are the surviving claims which may be included in a payment plan pursuant to Chapter 13."); *Lesniak,* 208 B.R. at 905 ("In order to have debts to repay, debts must exist. If a discharge order is entered, and the automatic stay is vacated as to secured creditors, a logical assumption is that debts no longer exist for the debtor to repay.").

A final argument that has been advanced against allowing conversion to chapter 13 after the issuance of a chapter 7 discharge (at least unless the discharge is vacated) is that chapter 13 provides its own discharge, and "only one discharge can be received in a case." *Leiter,* 109 B.R. at 925; *Hauswirth,* 242 B.R. at 97 (Bankr.N.D.Ga.1999) (collecting cases and holding that a chapter 7 discharge entered earlier in the same case must be vacated in order for debtor to proceed under chapter 13).

### C.

On examination, however, the arguments for an absolute rule that would bar a debtor from converting to chapter 13 after having received a chapter 7 discharge in the same case are not altogether convincing. Of course, in many such cases, the facts will strongly suggest an attempt to abuse the bankruptcy process. However, the court is not without the means to deal with such attempts on a case by case basis. First, in every chapter 13 case there is a requirement of good faith and fair dealing for confirmation of a plan. § 1325(a)(3), Bankruptcy Code. *See Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir. 1982) (adopting totality-of-circumstances test and suggesting factors to be considered); *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir.1986) (nondischargeability of a

---

**12.** Where the complaint is based on the debtor's refusal to obey a court order or to answer a material question, it must be brought before the closing of the case, or within one year of the granting of the discharge, whichever occurs later.

particular debt in chapter 7 is a factor that may be considered in assessing good faith); *Solomon v. Cosby (In re Solomon),* 67 F.3d 1128 (4th Cir.1995) (remanding for determination whether debtor's failure to fund plan from exempt retirement account constituted bad faith); *In re Cushman,* 217 B.R. 470 (Bankr.E.D.Va.1998) ("chapter 20" plan that unfairly attempted to achieve relief not available under either chapter 7 or 13 alone could not be confirmed). A debtor's lack of sincerity or attempt to manipulate the Bankruptcy Code are factors that may properly be considered in determining whether to confirm a plan. *In re Sieg,* 120 B.R. 533, 536 (Bankr.D.N.D.1990) ("Most courts regard a post-discharge conversion into Chapter 13 to be lacking in sincerity[.]"). Additionally, a chapter 13 plan must provide creditors with at least as much as they would receive in a chapter 7 liquidation. § 1325(a)(4), Bankruptcy Code. A plan, therefore, that attempts to deprive creditors of the benefit they would have received had the chapter 7 liquidation continued or otherwise deals with creditors in a way that is fundamentally unfair will not be confirmed. Failure by the debtor to obtain confirmation of a plan and denial of additional time to propose another plan is one of the statutory grounds for converting a chapter 13 case to chapter 7. § 1307(c)(5), Bankruptcy Code.

The problem of a debtor attempting to run the clock out on a potential action for revocation of discharge could be a more serious concern in some cases. However, where the facts suggest that a debtor is engaged in such a strategy, the court is not required to allow the debtor repeated opportunities to propose a confirmable plan. Under such circumstances, denial of confirmation may well warrant immediate reconversion.

 Third, the argument that once a discharge has been issued there are no debts for a plan to pay cannot be supported by a close reading of the Bankruptcy Code. The effect of a discharge is to prohibit collection of the discharged debt "as a personal liability of the debtor." § 524(a), Bankruptcy Code. It does not, however, affect the liability of any other person or entity for the debt. § 524(e), Bankruptcy Code. In particular, nothing in the Code suggests that a discharge eliminates the creditor's claim against the bankruptcy estate. *See Board of Comm'rs of Shawnee Co., Kansas v. Hurley,* 169 F. 92, 94 (8th Cir.1909) (filing of bankruptcy petition vests in creditors an equitable interest in the estate of the bankrupt) (decided under former Bankruptcy Act of 1898); *In re Groenleer–Vance Furniture Co.,* 23 F.Supp. 713, 715 (W.D.Mich.1938) ("It is to be noted that the rights of creditors become fixed at the moment of bankruptcy and that they then acquire a right in rem against the assets."). The bankruptcy estate comes into existence upon "the commencement of [the] case." § 541(a), Bankruptcy Code. Claims against the estate, if objected to, are determined "as of the date of the filing of the [bankruptcy] petition." § 502(b), Bankruptcy Code. Even in a chapter 7 case that has never been converted, the sequence of events is such that the debtor generally receives his or her discharge prior to the trustee making distributions to creditors. It has never been seriously argued, however, that creditors whose debts are discharged in the course of an unconverted chapter 7 case thereby suddenly lose the right to receive their pro rata share of distributions. The analysis is not altered simply because the case is converted. The conversion of a case does not change the date of the commencement of the case or the date of the filing of the petition. § 348(a), Bankruptcy Code. Thus, creditors with valid claims against the bankruptcy estate on the date the bankruptcy petition is filed do not lose them simply because the debtor is granted a discharge or the case is converted to another chapter.[13]

---

**13.** Because the granting of a discharge in a

case does not extinguish a creditor's right to

Finally, the argument that a debtor cannot convert after receiving a discharge because only one discharge can be received in a case, while it has a certain surface appeal, nevertheless has no direct support in the language of the Bankruptcy Code or Federal Rules of Bankruptcy Procedure. In this connection, it is illuminating that Congress, in crafting § 348, Bankruptcy Code, which specifies the effect of conversion from one chapter to another, included no language limiting the effect of a discharge entered prior to the conversion. Similarly, in drafting § 1328, Bankruptcy Code, the only express condition placed by Congress on eligibility for a discharge is "completion by the debtor of all payments under the plan." [14] Even if the earlier pre-conversion issuance of a chapter 7 discharge in the same case were viewed as sharply reducing the debtor's incentive to complete plan payments, it is difficult to see how creditors could be prejudiced, since no debts would be discharged by the comprehensive chapter 13 discharge than had not already been discharged by the more limited chapter 7 discharge until plan payments were complete. The only likely area of ambiguity would be with respect to long-term obligations on which the debtor had maintained payments during the term of the plan—that is, would the chapter 13 discharge (which excludes such obligations) supercede the chapter 7 discharge or merely supplement it? Regardless of the answer to that question, the secured creditor would never be worse off than in the analogous "chapter 20" scenario, where the debtor's personal liability on a mortgage is discharged in chapter 7 but the payment defaults under the mortgage are cured in a follow-up chapter 13.

## II.

Notwithstanding the court's conclusion that nothing in the Bankruptcy Code *requires* that a chapter 7 discharge be vacated [15] as a condition of proceeding under chapter 13, the debtors in both cases presently before the court have requested such relief, and to the extent the existence of the discharge may weigh in the determination of whether their respective plans have been proposed in good faith, the court is required to consider the request.

### A.

Courts are divided as to whether a discharge may ever be set aside at the debt-

distributions from the bankruptcy estate, the court need not reach the issue of whether a debtor could propose a plan which expressly provided for payment of discharged debts. The court notes, however, that a chapter 7 discharge does not prohibit a debtor from voluntarily repaying a discharged debt. § 524(f), Bankruptcy Code. Chapter 13 is by definition voluntary. Hence, there is no conceptual reason why a debtor could not propose to pay a discharged debt—even one discharged in a prior case—as long as such payment did not diminish the dividend that would otherwise be paid to creditors whose claims had not been discharged.

**14.** There are actually two different types of discharge that may be issued in chapter 13: a standard discharge (often colloquially referred to as a "super discharge" because of its broad scope compared with that of a chapter 7 discharge) and a so-called "hardship discharge." A hardship discharge may be granted if a debtor has been unable to complete payments "due to circumstances for which the debtor should not justly be held accounta-

ble," provided creditors have received the present value of what they would have received in a chapter 7 case. § 1328(b), Bankruptcy Code. A chapter 13 hardship discharge, however, does not discharge any debt that would be nondischargeable under chapter 7. § 1328(c), Bankruptcy Code.

**15.** There is an issue of terminology here. As will be discussed, § 727(d), Bankruptcy Code addresses *revocation* of a discharge. Revocation under § 727(d) has the same legal effect as denial or waiver of discharge and bars discharge, in a later case, of any debts that were or could have been scheduled in the prior case. Debtors who seek to have their discharges set aside, however, are usually doing so for purely procedural reasons, such as to permit negotiation of a reaffirmation agreement. To avoid confusion, the court will consistently use the term "vacate" rather than "revoke" to refer to the setting aside of a discharge in a case without prejudice to the subsequent grant, or reissuance, of a discharge in the case.

or's request. *Compare In re Leiter,* 109 B.R. 922 (Bankr.N.D.Ind.1990) ("[A] discharge order, once entered, can only be set aside by the trustee, a creditor, or the United States Trustee pursuant to 11 U.S.C. § 727(d) or (e), and not by motion of the Debtor.") *with In re Jones,* 111 B.R. 674 (Bankr.E.D.Tenn.1990) (discharge may be set aside on debtor's motion under Fed. R.Bankr.P. 9023 or 9024 under appropriate circumstances). Those courts that hold that a debtor has no standing to set aside his or her own discharge view § 727(d) and (e), Bankruptcy Code, as the sole mechanism by which a chapter 7 discharge may be nullified:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
>
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; or
>
> (3) the debtor committed an act specified in subsection (a)(6) of this section [refusal to obey a lawful order of the court or to respond to a material question].
>
> (e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—

> (1) under subsection (d)(1) of this section within one year after such discharge is granted; or
>
> (2) under subsection (d)(2) or (d)(3) of this section before the later of—
>
> > (A) one year after the granting of such discharge
> >
> > and
> >
> > (B) the date the case is closed.

Given the express statutory language, it is argued, there is simply no basis upon which a debtor may seek to have his or her own discharge set aside:

> The language of § 727(d) and (e) is unequivocal. Revocation of discharge can only be by the timely request of a trustee or a creditor, and only based on the grounds set therein. In addition, this must be done by adversary proceeding and not by motion.

*Leiter,* 109 B.R. at 925. Additionally, it is argued, these limitations cannot be avoided simply by invoking Rule 60(b), Federal Rules of Civil Procedure, which, with some limitations, is incorporated by Federal Rule of Bankruptcy Procedure 9024,[16] because "there is no issue of default of any party due to mistake, inadvertence, surprise or excusable neglect" and "[t]here is no judicial error to correct." *Leiter,* 109 B.R. at 925.

Other cases, as epitomized by *Jones,* take a somewhat more permissive view on the question of standing, even if that does not necessarily translate into a more favorable ruling for the debtor. In *Jones,* the court, after reviewing the conflicting case law, concluded that a chapter 7 discharge could potentially—although not in that case—be vacated on the debtor's motion under Federal Rule of Bankruptcy Procedure 9023 or 9024 under the following circumstances:

---

**16.** Federal Rule of Bankruptcy Procedure 9024 provides in relevant part as follows: Rule 60 F.R. Civ. P. applies in cases under the Code except that

> \* \* \* \* \* \*
>
> (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed

only within the time allowed by § 727(e) of the Code[.]

(1) when no creditor affected by the outcome objects and all appear to concur in the entry of a order vacating or revoking the order granting the discharge; and (2) where the factors of relative prejudice to other interested parties and lack of culpability of the debtor in allowing the discharge order to be entered weigh strongly in favor of the debtor.

111 B.R. at 680; see also *Hauswirth*, 242 B.R. at 97 (Rule 9024 allows chapter 7 discharge to be vacated in converted case to avoid "the inconsistency of allowing a debtor two discharges in one case"). In an analogous context, the Ninth Circuit held in *Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462 (9th Cir.1993) that § 1328(e), Bankruptcy Code, which governs revocation of a chapter 13 discharge, did not foreclose relief under Rule 60(b) in appropriate circumstances. In that case, the chapter 13 trustee had mistakenly failed to pay a timely-filed IRS claim, and, on the erroneous assumption that all claims had been paid, filed a final report 16 months into a 53–month plan, thereby triggering issuance of the discharge. Eight months later, the IRS filed a motion to reopen the case and vacate the discharge. The bankruptcy court granted the motion, and the Ninth Circuit affirmed, holding that § 1328(e)—which specifies fraud by the debtor as the sole ground for revoking a chapter 13 discharge—did not limit a bankruptcy court's power under Rule 60(b) to vacate a discharge order entered as a result of mistake, inadvertence, surprise, or excusable neglect.

 This court concurs with the reasoning in *Cisneros* and *Jones* and concludes that relief in the form of an order vacating a chapter 7 discharge may potentially be granted on motion of a debtor under Rule 60(b), Fed.R.Civ.P., as incorporated by Fed.R.Bankr.P. 9024. At the same time, Rule 60 relief, because it is an exception to the general rule favoring finality of judgments, is not lightly to be granted. Put another way, Rule 60 functions as a safety valve to prevent miscarriages of justice, and would seldom, if ever, be appropriate simply because a litigant changes his or her mind. Although the Bankruptcy Rules provide for issuance of a chapter 7 discharge as a matter of course after the time for objecting to discharge has passed, Fed.R.Bankr.P. 4004(c)(1), there is a mechanism for a debtor who genuinely needs to have his or her discharge delayed—for example, to conclude negotiations for a reaffirmation agreement—to move for deferral of the discharge. Fed.R.Bankr.P. 4004(c)(2). Given the availability of that procedure, it will be a rare instance where the debtor can show, after the discharge is granted, that it was entered as a result of mistake, inadvertence, surprise, or excusable neglect. As one court has admonished:

> The Debtor ... must be diligent in examining the available legal options prior to discharge and if time does not permit the Debtor has the remedy under Bankr.R. 4004(c) of obtaining an order on his motion to delay entry of the discharge order....As a matter of basic public policy, discharge orders must not be set aside merely because of ignorance of the law or carelessness of the parties by having failed to timely effect a choice of remedy.

*Leiter*, 109 B.R. at 925.

### B.

 It would be difficult to find that the debtors in either of the two cases presently before the court have made a compelling case for relief under Rule 9024. No evidence has been offered that the discharges in either case were entered as a result of inadvertence, mistake, surprise, or excusable neglect, either on the part of the court or on the part of the debtors. Rather, all that has happened is that the debtors have changed their minds and belatedly decided that they would be better off under chapter 13 than chapter 7. With respect to Mr. and Mrs. Coleman, the only "mistake" that has been shown is an incorrect assumption that the chapter 7 trustee

would not want to sell their house. Indeed, from the schedules it would appear that they may have affirmatively attempted to mislead the trustee as to the equity in the property by showing liens against it totaling $147,825, when the actual amount was some $40,000 less. In Dr. Mosby's case, there is no suggestion that she was not fully forthcoming on her schedules: instead, she apparently fears the trustee will not obtain full value for the property. Since she has significant nondischargeable priority tax debt, it is obviously in her interest that the property not go for a song. Nevertheless, the strategy that she now proposes—to rent the property in order to fund a plan—is one that she could easily have elected on March 16, 1999, when she filed her petition, or, in any event, prior to June 25, 1999, when she received her discharge. Even given the lenient construction of "excusable neglect" articulated by the Supreme Court in *Pioneer Investment Svcs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993),[17] it would be difficult to find that a proper basis existed for Rule 9024 relief.

It is true that in neither case has there been any opposition to the motion. Although the chapter 13 trustee has questioned whether a debtor has standing to request that his or her own discharge be vacated, the trustee has not opposed such relief on the merits and he would apparently prefer that the chapter 7 discharges be vacated if the debtors are to remain in chapter 13. In neither case, furthermore,

does it appear that vacating the discharge would result in any harm to creditors. Indeed, vacating the discharges would arguably reduce the potential for mischief arising out of the conversion. *Hauswirth* 242 B.R. at 97. The only foreseeable complication that could arise is if the reorganization attempt fails and the case is reconverted to chapter 7. Whether in that event the Bankruptcy Code would permit the granting of a new discharge, and, if so, what the procedure would be for its issuance, are questions as to which there is no clear answers.

It is certainly tempting—in light of the lack of opposition and the lack of any apparent prejudice to creditors—to set aside the chapter 7 discharge as the debtors have requested. At the same time, given the court's conclusion that the existence of a chapter 7 discharge is not a bar to proceeding under chapter 13, granting the motion would trivialize Rule 9024. Courts are not mere rubber stamps and ought not to decree relief that is not required simply because it makes the litigants feel better. For that reason, the motions to vacate the chapter 7 discharge will be denied.

### III.

Since the court has concluded that the granting of a chapter 7 discharge is not a bar to proceeding under chapter 13, neither dismissal nor immediate reconversion to chapter 7 is appropriate at this time.[18] Rather, the issue of reconversion

---

**17.** *Pioneer* involved the excusable neglect standard of Fed.R.Bankr.P. 9006 as applied to a late-filed proof of claim. In reaching its decision, however, the Court looked in part to cases construing "excusable neglect" in the context of Rule 60(b). 507 U.S. at 393–94, 113 S.Ct. at 1497–98. The important point is that the Supreme Court declined to limit excusable neglect to intervening circumstances beyond a party's control but recognized that it could embrace simple carelessness as well. 507 U.S. at 390, 113 S.Ct. at 1495. *Pioneer* explained that the determination of whether neglect is excusable is an equitable one, taking into account all relevant circumstances.

507 U.S. at 395, 113 S.Ct. at 1498. These include the danger of prejudice to the adverse parties, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.*

**18.** The chapter 13 trustee has moved for dismissal, not reconversion. However, given the apparent existence of assets from which creditor claims may be paid, dismissal would clearly not be in the best interest of creditors.

is more properly deferred pending a hearing on confirmation. *See, In re Spencer,* 137 B.R. 506, 515–16 (Bankr.N.D.Okla. 1992). The court expresses no view on the present record as to whether either plan satisfies the standards for confirmation, in particular the good faith test of § 1325(a)(3) and the liquidation test of § 1325(a)(4). The court simply notes, in connection with Mr. and Mrs. Coleman's case, that the good faith analysis includes the debtors' honesty in representing facts, *Deans,* 692 F.2d. at 972; and, in connection with both cases, that the liquidation test requires that creditors receive payments having a *present value,* not merely aggregate value, equal to what they would receive in a chapter 7 liquidation. What amount would likely be realized from the sale of the two properties for distribution to creditors in chapter 7, and what the appropriate discount rate should be for the present value computation, are issues more appropriately addressed at the respective hearings on confirmation.

A separate order will be entered in each case (a) denying the debtors' motion to vacate discharge, (b) denying the chapter 13 trustee's motion to dismiss, and (c) setting a hearing on reconversion to be held in conjunction with a hearing on confirmation.[19]

Hence, the motion to dismiss, as such, will be denied.

**19.** The original confirmation hearing date in each case was November 9, 1999. Under the Local Bankruptcy Rules for this district, however, confirmation hearing dates are tentative, and a hearing is actually placed on the calendar only if a timely objection to confirmation is filed. Since no objections were filed in either case, confirmation hearings were not held. The motions to dismiss by the chapter 13 trustee were filed within the time for objecting to confirmation. Because the trustee may not have filed a separate objection to confirmation on the belief that the motion to dismiss would be dispositive—and because the court is required, even in the absence of an objection, to determine that the plan meets the requirements for confirmation—the court will treat the motion to dismiss as including an objection to confirmation and will set a new confirmation hearing date in each case. The court will give the trustee until five business days prior to that date to serve and file a formal objection to confirmation.